STEPHEN J. COX
ATTORNEY GENERAL

Ronald W. Opsahl (Alaska Bar No. 2108081)
Jessica Moats Alloway (Alaska Bar No. 1205045)
Assistant Attorneys General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Email: ron.opsahl@alaska.gov
        jessie.alloway@alaska.gov

*Attorneys for State of Alaska*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DOUG BURGUM, in his official capacity as Secretary of the Interior, *et al.*, <br><br> Defendants. | Case No. 3:26-cv-00108-ACP <br><br> **STATE OF ALASKA'S MOTION TO DISMISS** |

Ten environmental public interest organizations have sued the United States Department of the Interior, its agencies and officials, and the State of Alaska, seeking to set aside Public Land Order 7966, reinstate PLOs 5150 and 5180, and divest the State of its vested real property interests in the affected lands.[1] In bringing this suit, Plaintiffs acknowledge that the State is a necessary and indispensable party to this action without

---

[1]     Compl. ¶ 1 (ECF No. 1).

which this Court could not "effect[] Plaintiffs' requested declaratory and injunctive relief."[2] Additionally, the State possesses sovereign property interests to most of the lands that were subject to PLO 7966, providing a second, independent basis for treating the State as a required party under Federal Rule of Civil Procedure 19.[3]

Ultimately, however, the State's status as a "required party" under Rule 19 does not control the outcome here, because "in the absence of a state voluntarily availing itself of federal court jurisdiction, or an express waiver of sovereign immunity, Rule 19(a) must yield to the state's assertion of sovereign immunity."[4] And, here, the State has not waived its immunity to suit in federal court. The State's sovereign immunity applies and "[a] federal court cannot summon a State before it in a private action seeking to divest the State of a property interest."[5] This Court lacks jurisdiction and must dismiss this action.[6]

---

[2]    *Id.* ¶ 30 (citing Fed. R. Civ. P. 19(a)); *see* Fed. R. Civ. P. 19(a)(1)(A) (defining "required party" to include those in whose absence the court cannot accord complete relief).

[3]    *See* Fed. R. Civ. P. 19(a)(1)(B)(i) (further defining "required party" to include those claiming an interest in the subject of the action who are situated such that their absence may "as a practical matter impair or impede [their] ability to protect the interest").

[4]    *Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1323-1324 (Fed. Cir. 2020).

[5]    *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 289 (1997) (O'Connor, J., concurring).

[6]    Fed. R. Civ. P. 12(b)(1); *see* U.S. Const. amend. XI; *see also Coeur d'Alene*, 521 U.S. at 296 (the Eleventh Amendment bars actions that are the functional equivalent of a quiet title suit against a state); *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1074 (9th Cir. 2014) ("*Coeur d'Alene* remains binding on us."); *Franke v. Boyle*, 2024 WL 229906 (Jan. 22, 2024) (Eleventh Amendment immunity barred challenge of right-of-way against Alaska state officials).

*NAEC, et al. v. Burgum*, *et al.*                                    Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                    Page 2 of 16
Case 3:26-cv-00108-ACP    Document 12    Filed 05/06/26    Page 2 of 16

## FACTUAL AND LEGAL BACKGROUND

In 1971, under authority provided to the President by the Pickett Act[7] and delegated to the Secretary of the Interior,[8] the Secretary issued PLO 5150,[9] withdrawing approximately 5.3 million acres of federal and non-federal land to establish a utility and transportation corridor for the Trans-Alaska Pipeline System and industrial haul road (now known as the Dalton Highway).[10] The following year, under authority provided in Section 17(d)(1) of the Alaska Native Claims Settlement Act,[11] the Secretary issued PLO 5180,[12] which included, all the lands subject to PLO 5150, among others, "temporarily" withdrawing those lands for study to determine the proper classification and to identify public values warranting protection.[13]

---

[7]     Act to authorize the President of the United States to make withdrawals of public lands in certain cases, ch. 421, 36 Stat. 847 (June 25, 1910).

[8]     Executive Order No. 10355, Delegating to the Secretary of the Interior the authority of the President to withdraw or reserve lands of the United States for public purposes (May 26, 1952), 17 Fed. Reg. 4831 (May 28, 1952).

[9]     Public Land Order No. 5150, *Withdrawal of Public Lands for a Utility Corridor*, 36 Fed. Reg. 25,410 (Dec. 31, 1971).

[10]     *Id.*; Compl. ¶ 62.

[11]     43 U.S.C. § 1616(d)(1).

[12]     Public Land Order No. 5180, *Withdrawal of Lands for Classification and for Protection of Public Interest in Lands*, 37 Fed. Reg. 5583 (Mar. 16, 1972).

[13]     *Id.* (the lands were "hereby reserved for study to determine the proper classification of the lands under section 17(d)(1) of said Alaska Native Claims Settlement Act, and to ascertain the public values in the land which need protection"); *see* Compl. ¶ 63.   The study and classification of these lands was completed by Congressional designation of additional conservation system units by the Alaska National Interest Lands Conservation Act in 1980, *see* 16 U.S.C. § 3101(d) ("This Act provides sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska"), and by a series of land use planning documents, including the 1981 Southwest Management Framework Plan, *(continued)*

*NAEC, et al. v. Burgum*, *et al*.                                     Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                     Page 3 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 3 of 16

Although ANCSA Section 17(c),[14] as originally enacted in 1971, prohibited the State from selecting lands[15] within the utility and transportation corridor—*i.e.*, the PLO 5150[16] lands—that prohibition was lifted in 1980 by Sections 906(j)(1) and 906(e) of the Alaska National Interest Lands Conservation Act.[17] ANCSA Section 17(c) provides:

---

*(continued)* the 1986 original Central Yukon Resource Management Plan, and the 1991 Utility Corridor Resource Management Plan. Following the December 2025 disapproval of the 2024 Central Yukon Record of Decision and Approved Resource Management Plan, Pub. L. 119-50, 139 Stat. 699 (Dec. 11, 2025), the Bureau of Land Management's management guidance for the Central Yukon planning area, including the Dalton Highway utility and transportation corridor, reverted to these earlier plans.

[14]     43 U.S.C. § 1616(c). Throughout their Complaint, Plaintiffs characterize PLO 5150 as being issued "pursuant" to ANCSA Section 17(c). *See, e.g.*, Compl. ¶ 115. This characterization is inaccurate, as Section 17(c) did not authorize any withdrawal. Instead, it imposed a condition on the lands if they were withdrawn under another, then-existing authority—such as the Pickett Act—for use as a utility and transportation corridor. 43 U.S.C. § 1616(c). A withdrawal made *subject to a condition* is different than a withdrawal made *pursuant to an authority*. While this distinction is not critical to the instant Motion, the State reserves any argument related to this distinction and its effect should further briefing become necessary.

[15]     Fundamental to Alaska's entry into the Union was the right to select and receive over 103 million acres of federal land, along with the underlying mineral resources. *See Trustees for Alaska v. Alaska*, 736 P.2d 324, 335-336 (Alaska 1987) ("The primary purpose of the statehood land grants contained in section 6(a) and 6(b) of the Statehood Act was to ensure the economic and social well-being of the new state."); Pub. L. 85-508, § 6, 72 Stat. 339 (1958) ("Statehood Act"). Following other statutory conveyances and amendments, *inter alia*, the total Statehood land entitlement due the State exceeded 105 million acres, of which approximately 5.1 million acres remained unfulfilled prior to the partial revocation of PLOs 5150 and 5180 subject to this action.

[16]     For ease of reading, hereafter, PLO 5150 and PLO 5180 will be referred to collectively as "PLO 5150," unless otherwise noted.

[17]     43 U.S.C. § 1635(e), (j)(1). In fact, since initial issuance, the lands included within PLO 5150 have been amended several times to partially revoke or "modify" the withdrawals to allow conveyances to an Alaska Native regional corporation and to the State. *See, e.g.*, Public Land Order No. 5869, 44 Fed. Reg. 41,795 (July 18, 1979) (partial revocation to allow 3,520 +/- acres for conveyance to Cook Inlet Region, Inc.); Public Land Order No. 6932, 57 Fed. Reg. 24,986 (June 12, 1992) *(continued)*

*NAEC, et al. v. Burgum*, *et al.*                                    Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                         Page 4 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 4 of 16

> In the event that the Secretary withdraws a utility and transportation corridor across public lands in Alaska pursuant to his existing authority, the State, the Village Corporations and the Regional Corporations shall not be permitted to select lands from the area withdrawn.[18]

As noted above, the Dalton Highway utility and transportation corridor was withdrawn by PLO 5150, under delegated authority derived from the Pickett Act.

Congress reversed the categorical prohibition—and specifically removed the selection restrictions applicable to PLO 5150 lands—when it enacted ANILCA. ANILCA Section 906(j)(1) provides:

> [T]o the extent that Public Land Orders Numbered 5150 . . . continue to prohibit State selections of certain lands, such lands shall remain unavailable for future State selection *except as provided by subsection (e) of this Act*[.][19]

Section 906(e)—"subsection (e) of this Act"—authorized the State to file "future 'top filings,'" that is, State land selection applications for lands not then available within the meaning of Section 6(a) or (b) of the Alaska Statehood Act.[20] "Each such application, if otherwise valid, would become an effective selection without further State action upon the date the lands become available under Section 6(a) or (b), regardless of whether such date occurs before or after expiration of the State's land selection rights."[21] Section

---

*(continued)* ("modification" to allow 676,987 +/- acres for state selection); Public Land Order No. 7150, 60 Fed. Reg. 39,655 (Aug. 3, 1995) ("modification" to allow 3,840 +/- acres for state selection).

[18]    43 U.S.C. § 1616(c).

[19]    *Id.* § 1635(j)(1) (emphasis added).

[20]    *Id.* § 1635(e).

[21]    *Id*.

*NAEC, et al. v. Burgum*, *et al*.                     Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                     Page 5 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 5 of 16

906(e) also allowed the State to refile pre-ANILCA selection applications to conform them to Section 906(e)'s requirements and authorizations.[22]

The State filed land selection applications pursuant to Sections 6(a) and 6(b) of the Alaska Statehood Act and ANILCA Section 906(e)—initially on November 14, 1978, and as amended through December 31, 1992—covering approximately 2.07 million acres within the PLO 5150 withdrawal area and among the lands subject to PLO 7966's partial revocation.[23]

On February 25, 2026, the Secretary published PLO 7966 in the Federal Register.[24] Through PLO 7966, the Secretary revoked PLOs 5150 and 5180 as to approximately 2,127,845 acres of public lands north of the Yukon River that had been withdrawn for the Dalton Highway utility and transportation corridor. To restore and reopen these public lands to appropriation, PLO 7966 also included an opening order providing:[25]

---

[22] *Id.*

[23] U.S. Dep't of Interior, *Decision Rationale for the Revocation of Public Land Order No. 5150 and 5180 in the Dalton Utility Corridor North of the Yukon River* (Jan. 29, 2026), available at https://www.blm.gov/sites/default/files/docs/2026-03/PLO_7966_Decision_Rationale.pdf. PLO 7966 is limited to lands north of the Yukon River, while PLO 5150 remains in place for lands south of the Yukon River. *Id.* Further, as noted above, some State and Alaska Native selections within the PLO 5150 withdrawal area have already been conveyed, so are likewise not within the terms of PLO 7966.

[24] Public Land Order No. 7966, *Partial Revocation of Public Land Order Nos. 5150 and 5180, as Amended, Modified, or Corrected; Alaska*, 91 Fed. Reg. 9293 (Feb. 25, 2026).

[25] *See* 43 C.F.R. § 2091.6 ("Lands included in a withdrawal that is revoked, terminates or expires do not automatically become open, but are opened through publication in the Federal Register of an opening order. . . . In each case, the *(continued)*

*NAEC, et al. v. Burgum, et al.*                                      Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                      Page 6 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 6 of 16

> At 8 a.m. Alaska time on March 27, 2026, the lands described in Paragraph 1 shall be open to all forms of appropriation under the general public land laws, including location and entry under the mining laws, leasing under the Mineral Leasing Act of February 25, 1920, as amended, subject to valid existing rights, the provisions of existing withdrawals, other segregations of record, and the requirements of applicable law. All valid applications received at or prior to 8 a.m. Alaska time on March 27, 2026, shall be considered as simultaneously filed at that time.[26]

By its terms, the opening order returned to the operation of public land laws those lands that had been withdrawn by PLO 5150 north of the Yukon River. Accordingly, by operation of the opening order, the vast majority of those lands again became available for conveyance to the State, so long as those lands were not otherwise occupied, reserved, or appropriated.[27] Thus, the State's top-filed selections, authorized by ANILCA Sections 906(e) and 906(j)(1), became effective selections at 8:00 a.m. on March 27, 2026.[28] Once the State's selections became effective, the vacant, unreserved, and unappropriated selected lands were segregated from all other appropriations.[29]

---

*(continued)* opening order specifies the time, date and specific conditions under which the lands are opened.").

[26]    37 Fed. Reg. at 9295.

[27]    *See* Statehood Act § 6(a), (b); 43 U.S.C. § 1635(e).

[28]    U.S. Dep't of Interior, *Decision*, AKAK106637381-F44207, et al., *Community Grant and General Purposes Grant State Selections* (April 21, 2026) ("Decision") (attached hereto as Exhibit 1); *see also* Compl. ¶ 45. BLM has prepared a map depicting the PLO 7966 revocation area and the lands that became State-selected on March 27, 2026, which is available at: https://www.blm.gov/sites/default/files/docs/2026-03/BLM-AK-PLO7966_24X48_Map.pdf (last visited May 1, 2026).

[29]    *See* 43 C.F.R. § 2627.4(b).

*NAEC, et al. v. Burgum, et al.*                    Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                    Page 7 of 16
Case 3:26-cv-00108-ACP    Document 12    Filed 05/06/26    Page 7 of 16

On July 22, 2025—as revised on October 9, 2025, and January 26, 2026—the State requested priority conveyance[30] of the available federal land within the Dalton Highway utility and transportation corridor north of the Yukon River. On April 21, 2026, the Department of the Interior issued its Decision finding the State's selections proper and approved for future conveyance.[31] On May 5, 2026, the United States issued Tentative Approval to the State for approximately 1.38 million acres,[32] at which time equitable title to those lands vested in the State.[33] Following Tentative Approval, the United States retained only bare legal title.[34]

On March 10, 2026, Plaintiffs filed their Complaint.[35] Despite the 30-day window between publication of PLO 7966 in the Federal Register and the effective date of its

---

[30]   *See* 43 U.S.C. § 1635(d)(3) ("The sequence of issuance of such tentative approvals shall be on the basis of priorities determined by the State.").

[31]   Decision at 6 ("The lands approved herein meet the criteria for compactness, are unreserved, are not known to be occupied or appropriated under the public land laws, are not valuable for hot or medicinal springs, and otherwise conform to the requirements of the Alaska Statehood Act. These lands are hereby approved for future conveyance to the State of Alaska.").

[32]   U.S. Dep't of Interior, *Tentative Approval*, AKAK106637381/F-44207, et al. (May 5, 2026) ("Tentative Approval") (attached hereto as Exhibit 2).

[33]   43 U.S.C. § 1635(c)(1), (4) ("all right, title, and interest of the United States in and to such lands is deemed to have vested in the State of Alaska as of the date of tentative approval"). Unless and until the State relinquishes its valid land selections pursuant to ANILCA Section 906(f)(2), *id.* § 1635(f)(2), the State continues to enjoy presumptive title to the balance of its selections that have not yet been conveyed.

[34]   43 U.S.C. § 1635(c)(1), (4); *see also Wyoming v. United States*, 255 U.S. 489, 501-502 (1921); *Leonard v. Lennox*, 181 F. 760, 762 (8th Cir. 1910) ("When one becomes entitled to a patent, he is treated as the beneficial owner of the land, and the United States is regarded as holding the naked legal title in trust for him . . ..");  *Nw. Alaskan Pipeline Co.*, 99 IBLA 201 (1987).

[35]   ECF No. 1.

*NAEC, et al. v. Burgum, et al.*                                          Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                    Page 8 of 16
Case 3:26-cv-00108-ACP    Document 12    Filed 05/06/26    Page 8 of 16

opening order, Plaintiffs did not seek a temporary restraining order or preliminary

injunction to stay the opening order. Had they done so, an injunction would have

prevented PLO 7966 lands from returning to the operation of the public land laws,

prevented the State's selections from attaching, and prevented the State's sovereign

property interests from vesting.[36] Plaintiffs' failure to seek preliminary relief before the

lands were restored and opened is fatal to this action. This Court no longer has subject

matter jurisdiction, and this case must be dismissed.

## LEGAL STANDARD

A party may move to dismiss for lack of jurisdiction under Federal Rule of Civil

Procedure 12(b)(1), and such motions are an appropriate vehicle for dismissal on

sovereign immunity grounds.[37] The plaintiff bears the burden of proving the existence of

the court's subject matter jurisdiction.[38] "A federal court is presumed to lack jurisdiction

in a particular case unless the contrary affirmatively appears."[39]

---

[36] Because the segregative effect of PLO 5150 did not lift until the effective date of the opening order, the State's selection applications for those lands would have remained as top-filed selection applications had the opening order been enjoined. *See State of Alaska*, 108 IBLA 181, 186 (1989) (selection takes effect if and when lands become available for selection); 43 C.F.R. § 2091.6 (lands are opened through publication of an opening order specifying the time and date of opening); *see also e.g.*, *Extension of the Opening Order in Public Land Order No. 7899 and Addressing Pending Public Land Orders in Alaska*, 86 Fed. Reg. 20,193 (Apr. 16, 2021) (in a decision covering unrelated lands, extending effective date of a different opening order two years, preventing the State's top-filed selection applications from becoming current selections).

[37] *See Lacano*, 765 F.3d at 1071; *Franke*, 2024 WL 229906, *1.

[38] *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

[39] *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-969 (9th Cir. 1981).

*NAEC, et al. v. Burgum, et al.*      Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss      Page 9 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 9 of 16

A Rule 12(b)(1) challenge may be facial or factual. In a facial attack, the court takes the complaint's allegations as true and determines whether they are sufficient on their face to invoke federal jurisdiction—the same standard applied under Rule 12(b)(6).[40] In a factual attack, the challenger disputes the truth of the jurisdictional allegations, and the court may look beyond the complaint to extrinsic evidence without converting the motion to one for summary judgment.

Where applicable, the Court should also assess the sufficiency of Plaintiffs' claims under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face."[41] A claim is facially plausible when the pleaded facts permit the court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."[42] The court must accept material factual allegations as true and draw reasonable inferences in the plaintiff's favor,[43] but is "not bound to accept as true a legal conclusion couched as a factual allegation," and need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."[44] In support of this Motion, the State has attached Exhibits 1 and 2—the Department of the Interior's April 21, 2026, Decision and May 5, 2026, Tentative

---

[40]     *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[41]     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[42]     *Id*. at 678.

[43]     *Id*.

[44]     *Id*. at 658 (quoting *Twombly*, 550 U.S. at 555); *Lacano*, 765 F.3d at 1071.

*NAEC, et al. v. Burgum, et al*.                              Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                         Page 10 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 10 of 16

Approval. Both are official agency records whose accuracy cannot reasonably be questioned, and this Court may take judicial notice of them.[45]

The State's sovereign immunity argument presents a facial attack: the Complaint's allegations confirm that the State is a required, non-consenting party whose sovereign immunity bars this action. The State's argument that Plaintiffs' failure to seek preliminary relief divested this Court of jurisdiction presents a factual attack supported by the record.

## ARGUMENT

In this case, Plaintiffs seek to invoke the federal judicial power to divest the State of Alaska of its sovereign property interests in Statehood Act lands. Although Plaintiffs style their complaint as seeking declaratory and injunctive relief against federal agencies and officials, the true nature of the relief they seek is an order stripping the State of approximately 1.38 million acres to which it holds equitable title following Tentative Approval, and an additional 0.7 million acres of effective selections to which it holds presumptive title that have not yet been tentatively approved or relinquished. Under well-settled law, such a suit may not proceed in federal court without the State's consent—which has not been given.

"Generally, States are immune from suit under the terms of the Eleventh

---

[45]    Fed. R. Evid. 201(b); *see Silver State Land LLC v. United States*, 148 Fed. Cl. 217, 245, n.55 (2020) (court took judicial notice of Bureau of Land Management notice of reality action).

*NAEC, et al. v. Burgum, et al.*                                      Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                            Page 11 of 16
Case 3:26-cv-00108-ACP    Document 12    Filed 05/06/26    Page 11 of 16

Amendment and the doctrine of sovereign immunity."[46] The Supreme Court has

explained that the doctrine protects the "dignity and respect afforded a State" in our

federal system,[47] and is rooted both the text of the Eleventh Amendment and in principles

"implicit in the constitutional design."[48] A state may waive its Eleventh Amendment

immunity only by giving an "unequivocal indication" of consent to suit in a federal

court.[49] Such an "unequivocal indication" may be established by (1) the state expressly

consenting to federal jurisdiction in the context of the litigation;[50] (2) a state statute or

constitutional provision expressly providing for suit in federal court;[51] or (3) Congress

clearly abrogating the state's sovereign immunity.[52] None of these conditions are present

here.

*First*, the State has not consented to suit in this litigation. This Motion is the

State's first substantive pleading and constitutes its express assertion of non-consent.

*Second*, no Alaska state statute or constitutional provision waives the State's

immunity from suit in federal court. Alaska Statutes once granted the Alaska Attorney

---

[46]     *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021); *Galette v. N.J. Transit Corp.*, 607 U.S. ___, 146 S.Ct. 854, 865 (2026).

[47]     *Coeur d'Alene*, 521 U.S. at 267-268.

[48]     *Alden v. Maine*, 527 U.S. 706, 729 (1999).

[49]     *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), *superseded by statute Lane v. Pena*, 518 U.S. 187, 198 (1996).

[50]     *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).

[51]     *Atascadero*, 473 U.S. at 238, n.1.

[52]     *Allen v. Cooper*, 589 U.S. 248, 255 (2020); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996).

*NAEC, et al. v. Burgum, et al.*                                        Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                              Page 12 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 12 of 16

General limited authority to waive the State's Eleventh Amendment immunity, but only for suits in federal court initiated *before* January 1, 1999,[53] and only in cases involving the State's title to submerged lands.[54] That authority expired on January 1, 1999, and has not been renewed.[55]

*Third*, no Congressional waiver applies. Plaintiffs assert that "Defendants' sovereign immunity is waived pursuant to the [Administrative Procedure Act]."[56] The APA, however, waives only the federal government's sovereign immunity[57]—it does not waive any state's sovereign immunity. Nor does the APA authorize suits against non-agency defendants, even those who may benefit from an agency's alleged statutory violation.[58] The State is not a federal agency, and Plaintiffs cannot conscript the APA to haul a non-consenting State into federal court.

The State acknowledges that dismissal is a harsh remedy, but it is one entirely of Plaintiffs' making. Plaintiffs chose not to seek preliminary relief during the 30-day window before the opening order took effect. Once the State's property interests fully vested—once the top-filed selections became fully effective—there was no longer any

---

[53]   Alaska Stat. § 44.23.020.

[54]   *Id.* § 44.23.020(c).

[55]   *Id.*

[56]   Compl. ¶ 8 (citing 5 U.S.C. § 702).

[57]   5 U.S.C. § 702.

[58]   *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988) ("We know of no cases explicitly permitting a private suit under § 702 against a nonagency defendant, even in a case such as this in which the nonfederal actor, by its unrestrained actions, could defeat the objectives sought in the suit against the agency.").

*NAEC, et al. v. Burgum*, et al.                                    Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                  Page 13 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 13 of 16

relief this Court could grant consistent with the State's sovereign immunity and vested title.

The State has not waived its Eleventh Amendment sovereign immunity, and this case therefore must be dismissed.

## CONCLUSION

This action is barred by the Eleventh Amendment and Plaintiffs cannot show any waiver of the State's sovereign immunity that would allow this matter to proceed. Because no amendment could cure this defect, leave to amend would be futile.[59] Accordingly, this Court should dismiss this action with prejudice under Federal Rule of Civil Procedure 12(b)(1).

DATED: May 6, 2026.

STEPHEN J. COX
ATTORNEY GENERAL

By:     */s/ Ronald W. Opsahl*
        Ronald W. Opsahl (Bar No. 2108081)
        Jessica M. Alloway (Bar No. 1205045)
        Assistant Attorneys General
        Alaska Department of Law
        1031 West Fourth Avenue, Suite 200
        Anchorage, Alaska 99501
        Phone: (907) 269-5100
        Email: ron.opsahl@alaska.gov
                    jessie.alloway@alaska.gov

        *Attorneys for State of Alaska*

---

[59]     *See Lacano*, 765 F.3d at 1076 (holding "any amendment would be futile" and "[n]o set of facts pleaded by Plaintiffs would allow their complaint to proceed, given *Coeur d'Alene*").

*NAEC, et al. v. Burgum, et al*.                    Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                    Page 14 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 14 of 16

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 3,872 words.

/s/ Ronald W. Opsahl
Ronald W. Opsahl
Senior Assistant Attorney General

*NAEC, et al. v. Burgum, et al.*                                     Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                                       Page 15 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 15 of 16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I caused copies of the foregoing to be served by electronic means on all counsel of record by using the Court's CM/ECF system.

/s/ Ronald W. Opsahl
Ronald W. Opsahl
Senior Assistant Attorney General

*NAEC, et al. v. Burgum, et al.*                                Case No. 3:26-cv-00108-ACP
State of Alaska's Motion to Dismiss                        Page 16 of 16
Case 3:26-cv-00108-ACP     Document 12     Filed 05/06/26     Page 16 of 16