Bridget Psarianos (AK Bar No. 1705025)
Suzanne Bostrom (AK Bar No. 1011068)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
sbostrom@trustees.org

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DOUG BURGUM, *et al.*, <br><br> Defendants. | Case No. 3:26-cv-00108-ACP |

**PLAINTIFFS' RESPONSE TO STATE OF ALASKA'S MOTION TO DISMISS**

Plaintiffs Northern Alaska Environmental Center *et al.* (collectively, Northern Center) are asking this Court to declare unlawful and set aside actions by the U.S. Department of the Interior (Interior) and Bureau of Land Management (BLM) to revoke longstanding protections on millions of acres of public lands. Northern Center has separately requested that this Court enjoin Interior from taking further steps to convey the

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 1

public lands at issue in this case to the State of Alaska (State) until the merits are resolved.

The State seeks to dismiss this litigation under the theory that this Court cannot provide a remedy for Interior's violation of multiple federal laws due to the State's sovereign immunity. But the State misapprehends the nature of Northern Center's case and the relief sought. This is not a quiet title action against the State, and regardless of whether the State's sovereign immunity precludes its joinder, the Court nonetheless has subject-matter jurisdiction over Northern Center's claims against Interior and BLM.

As explained below, this Court may grant Northern Center's requested relief against Federal Defendants and issue declaratory and injunctive relief even in the State's absence. This is supported by case law, the Federal Rules of Civil Procedure, and the public interest exception to traditional joinder rules. More broadly, the novel legal issues presented by this case and its unique procedural posture are best addressed on the merits. A motion to dismiss is not the appropriate vehicle for the Court to determine the scope of statutory provisions that are a matter of first impression. To the extent that the State cannot be joined as a Defendant and does not consent to participate in this litigation, the appropriate path is to remove the State as a Defendant and allow Northern Center's case against Federal Defendants to continue.

<u>BACKGROUND</u>

In 1971, Congress enacted the Alaska Native Claims Settlement Act (ANCSA), prompted by the discovery of oil on the North Slope and the proposal to build the Trans-Alaska Pipeline System (TAPS).[1] Specifically, the discovery of oil at Prudhoe Bay pushed Congress to settle land claims to allow unhindered construction of TAPS.[2]

The Dalton Highway, built in the 1970s to support TAPS construction, stretches from Livengood to Prudhoe Bay, and it is now used extensively for recreation, tourism, subsistence, and other public purposes.

Shortly after ANCSA's enactment, the Secretary of the Interior (Secretary) withdrew over two million acres of public lands encompassing the area surrounding what is now TAPS and the adjacent Dalton Highway (hereinafter, the Corridor) through Public Land Orders (PLO) 5150 and 5180. The withdrawals in PLO 5150, established in 1971, are subject to ANCSA Section 17(c)'s prohibition against land selections by the State within the Corridor.[3] Section 17(c) reflects Congress's intention for these lands to remain in federal ownership for the duration of TAPS operation to provide stability for management within the Corridor and to protect environmental values.[4] In 1972, the Secretary issued PLO 5180 pursuant to ANCSA Section 17(d)(1) over much of the same

---

[1] *See Alyeska Pipeline Serv. Co. v. Kluti Kaah Native Vill. of Copper Ctr.*, 101 F.3d 610, 613 (9th Cir. 1996).

[2] *Id.*

[3] Public Land Order 5150, 36 Fed. Reg. 25410 (Dec. 31, 1971); 43 U.S.C. § 1616(c).

[4] 43 U.S.C. § 1616(c); S. Rep. No. 92-405, at 70–71 (1971).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 3

area, removing these lands from all forms of appropriation to protect the public interest.[5] Together, the statutory prohibition and the withdrawals in PLOs 5150 and 5180 have broadly protected lands within the Corridor from mining, mineral leasing, and otherwise being conveyed out of federal ownership for over fifty years. When Congress enacted the Alaska National Interest Lands Conservation Act (ANILCA) in 1980, it included a provision allowing the State to "topfile," *i.e.*, note its desire to select lands that were unavailable for conveyance at the time, but which might later become available.[6]

Interior changed these longstanding protections earlier this year. On February 20, 2026, the Secretary issued a "Decision Rationale" purporting to explain his decision to revoke PLOs 5150 and 5180.[7] The Secretary stated that revoking the withdrawals would open the Corridor to location and entry under the public land and mining laws, and would allow over two million acres of "topfiled" land to become valid State selections.[8] BLM did not undertake an environmental review process under the National Environmental Policy Act (NEPA) or conduct a full evaluation of subsistence impacts under ANILCA Section 810 for that decision.[9]

---

[5] Public Land Order 5180, 37 Fed. Reg. 5583 (Mar. 16, 1972).
[6] 43 U.S.C. § 1635(e).
[7] Pls.' Ex. D, ECF No. 17-10; *see also* Public Land Order No. 7966, 91 Fed. Reg. 9293 (Feb. 25, 2026).
[8] Pls.' Ex. D at 1.
[9] Pls.' Ex. C, ECF No. 17-9; Pls.' Ex. D at 6–11.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                         Page 4

Northern Center promptly filed this lawsuit because the Secretary's and BLM's actions revoking the withdrawals violated numerous federal statutes.[10] Northern Center seeks declaratory and injunctive relief, including a declaratory judgment that the Secretary's treatment of the State's topfiled lands within the Corridor as effective selections is unlawful under Section 17(c).[11] Northern Center specifically alleged that it would be unlawful for the Secretary to transfer federal lands within the Corridor to the State because the statutory prohibition in ANCSA Section 17(c) would render any land transfer void ab initio.[12] Northern Center further alleged that Federal Defendants violated ANCSA Section 17(d)(1) by failing to demonstrate that revoking PLO 5180 was consistent with the public interest, violated the Federal Land Policy and Management Act (FLPMA) by failing to comply with its mandates for withdrawal revocation and failing to provide for public participation, failed to abide by ANILCA Section 810's substantive and procedural mandates to protect subsistence, violated the Administrative Procedure Act (APA) by failing to provide a reasoned explanation for its policy reversal, and violated NEPA by failing to analyze the adverse environmental impacts of its withdrawal revocation.[13] Northern Center thus asks this Court to review the agencies' decisions and accompanying administrative record and declare unlawful and set aside the invalid

---

[10] Compl. for Declaratory & Injunctive Relief, ECF No. 1 [hereinafter Compl.].
[11] *Id.* at 49–50.
[12] *Id.* at 41–43.
[13] *Id.* at 43–49.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 5

actions.[14] Northern Center included the State as a defendant for purposes of giving this Court the broadest range of options to effect relief, not because every form of effective relief depends on the State's presence, and did not assert any claims directly against the State.[15]

On May 5, 2026, BLM began to transfer lands within the Corridor and issued tentative approvals to convey title to approximately 1.4 million acres to the State.[16] The next day, the State moved to dismiss this litigation, arguing that this Court can no longer grant Northern Center any relief due to the status of the land conveyances and the State's sovereign immunity.[17]

To Northern Center's knowledge, Interior has not yet conveyed patents to the State for the nearly 1.4 million acres of land covered by the tentative approvals, as the State acknowledges;[18] Interior cannot do so until the lands have been fully surveyed and other steps are completed.[19] As such, while the State may have equitable title to

---

[14] *Id.* at 49–50.

[15] *Id*. at 15.

[16] Pls.' Ex. F, ECF No. 17-12.

[17] State of Alaska's Mot. to Dismiss, ECF No. 12 [hereinafter State Mot.].

[18] *Id*. at 8.

[19] *See* Alaska Statehood Act, Pub. L. No. 85-508, § 6(g), 72 Stat. 339, 341–42 (1958) [hereinafter Statehood Act]. Although ANILCA section 906(c)(1) states that a tentative approval "confirms that all right, title, and interest of the United States" passes to the State, this is boilerplate language commonly used in quitclaim deeds. *See* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 788–89 (3d ed. 2011). It confirms the transfer of only whatever "right, title, and interest" the United States holds, including restrictions on such interests, such as those in ANCSA section 17(c). *See City of Santa Monica v. United States*, 650 F. App'x 326, 327–28 (9th Cir. 2016).

tentatively approved lands, Interior retains legal title.[20] It further appears that Interior has not yet taken any steps to tentatively approve the conveyance of the remaining roughly 700,000 acres within the Corridor.[21] On May 21, 2026, Northern Center filed a motion for injunctive relief, seeking to maintain the status quo and enjoin any further actions to convey lands within the Corridor to the State while this litigation is pending.[22]

## LEGAL STANDARDS

District courts have subject-matter jurisdiction over all actions arising under federal law or to compel a federal agency to perform a mandatory duty.[23] Due to the broad grant of power conferred to the courts by 28 U.S.C. § 1331, jurisdictional dismissals in actions premised on federal questions "are exceptional."[24] They are only warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."[25]

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may assert that a court lacks subject-matter jurisdiction. However, "[t]o invoke a federal court's subject-

---

[20] *See* Pls.' Ex. F, ECF No. 17-12; State Mot. at 8. Under the Statehood Act, the State may only issue conditional approvals for activities prior to patent issuance. Statehood Act § 6(g).

[21] Pls.' Ex. F; Pls.' Ex. E, ECF No. 17-11.

[22] Pls.' Mot. for TRO & Prelim. Inj., ECF No. 17 [hereinafter Pls.' Inj. Mot.].

[23] 28 U.S.C. §§ 1331, 1361.

[24] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[25] *Id.* at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                     Page 7

matter jurisdiction, a plaintiff needs to provide only 'a short and plain statement of the grounds for the court's jurisdiction.'"[26] Courts "should be especially reluctant to dismiss" claims on the pleadings when the claims involve a novel legal theory or a matter of first impression, finding them best resolved on a full record and full briefing.[27]

Federal Rule of Civil Procedure 19 governs joinder of parties and sets out a three-step inquiry.[28] First, courts decide whether the party is "necessary" or "required" to be joined under Rule 19(a).[29] A party is "required" to be joined where "joinder will not deprive the court of subject-matter jurisdiction" and (1) "the court cannot accord complete relief among existing parties" in their absence or (2) the party has "an interest relating to the subject of the action" and proceeding in the party's absence may impair the party's ability to protect that interest or leave an existing party subject to a "substantial risk" of incurring inconsistent legal obligations.[30] Second, the court determines whether such party can be feasibly joined.[31] If the court determines the absent party is necessary and cannot be joined, courts then engage in a third step and determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be

---

[26] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting FED. R. CIV. P. 8(a)(1)).

[27] *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (quoting *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985)); *see also Kennedy ex rel. NLRB v. L.A. Typographical Union No. 174*, 418 F.2d 6, 8 (9th Cir. 1969).

[28] *Maverick Gaming LLC v. United States*, 123 F.4th 960, 972 (9th Cir. 2024).

[29] *Id.* at 972.

[30] FED. R. CIV. P. 19(a).

[31] *Maverick*, 123 F.4th at 972.

dismissed" under Rule 19(b).[32] Additionally, courts may apply the public rights exception to Rule 19, whereby litigation may continue in a required party's absence.[33] More broadly, Rule 19's "inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application."[34]

<u>ARGUMENT</u>

To the extent that sovereign immunity precludes joinder of the State in this action, the State is nonetheless incorrect that dismissal is warranted. First, the Court can grant Northern Center's requested relief against Interior in the State's absence. Second, even if the State is a necessary party under Rule 19(a), Northern Center meets Rule 19(b)'s factors for allowing this action to proceed. Finally, the public rights exception should permit the case to proceed because Northern Center's claims seek to vindicate public rights and the litigation would not destroy the State's topfilings within the Corridor.

The State offers a range of theories for dismissing this entire case, but regardless of whether the Court treats the State's arguments as a facial or factual attack,[35] the result is the same: this Court has jurisdiction to adjudicate Northern Center's claims against Interior, regardless of the State's participation.

---

[32] *Id.*

[33] *Id.* at 982.

[34] *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002).

[35] State Mot. at 9–14.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 9

## I. THIS COURT CAN GRANT NORTHERN CENTER'S REQUESTED RELIEF AGAINST INTERIOR.

This Court may render an adequate judgment without the State because Northern Center seeks declaratory and injunctive relief against Interior and seeks no affirmative relief against the State. The APA "embodies a 'basic presumption of judicial review,' and instructs reviewing courts to set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"[36] Judicial review of agency action is critical because "legal lapses and violations" are more likely to occur "when they have no consequence."[37] While concepts of sovereign immunity and subject-matter jurisdiction are often "closely linked in suits against the government," they "present distinct issues" and should not be "mistakenly equate[d]."[38]

Under these principles, even if sovereign immunity precludes the State from being joined pursuant to Rule 19(a), this Court should deny the State's motion to dismiss. Northern Center asserts that Interior violated multiple federal laws when conveying the land to the State.[39] A number of these allegations, including the Secretary's violations of

---

[36] *U.S. Dep't of Com. v. New York*, 588 U.S. 752, 771 (2019) (first quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967); and then quoting 5 U.S.C. § 706(2)(A)); *cf. Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (explaining courts presume judicial review of administrative action is available when approaching statutory construction questions).

[37] *Mach Mining, LLC v. U.S. Equal Emp't Opportunity Comm'n*, 575 U.S. 480, 489 (2015).

[38] *United States v. Park Place Assocs.*, 563 F.3d 907, 923–24 (9th Cir. 2009) (alteration in original) (quoting *Powelson v. United States*, 150 F.3d 1103, 1104 (9th Cir. 1998)).

[39] Compl. at 41–49; *supra* Background (summarizing claims).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 10

ANCSA Sections 17(c) and 17(d)(1), as well as the scope of Secretary's authority to revoke withdrawals under FLPMA, are matters of first impression, warranting further development in briefing with an administrative record and a decision on the merits.[40] Importantly, these allegations are sufficient on their face to invoke the Court's subject-matter jurisdiction, making dismissal improper.[41]

If Northern Center succeeds on the merits, this Court has subject-matter jurisdiction to remand this matter to Interior to cure its unlawful actions, including by suspending any further steps to convey land title to the State and using the mechanisms available to Interior to recover full title to lands that were unlawfully transferred.[42] The Ninth Circuit and this Court have explained that courts have subject-matter jurisdiction as to Interior, notwithstanding the State's sovereign immunity, where a plaintiff seeks to halt or set aside an unlawful land conveyances to the State. For example, in *Harrison v. Hickel*, several Native allotment applicants sued the State, arguing that the State unlawfully held a right-of-way interest across their lands, which was granted by

---

[40] *Supra* note 28.

[41] *See Leite*, 749 F.3d at 1121 (explaining that courts "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor" to determine whether a complaint's allegations are sufficient to invoke jurisdiction); *supra* Legal Standards.

[42] *See* 43 U.S.C. § 2506 (setting statute of limitations on "[s]uits by the United States to vacate and annul any patent"); *see, e.g.*, *Mullan v. United States*, 118 U.S. 271 (1886) (holding a patent issued contrary to law could be canceled in a suit by the United States); *S. Pac. R.R. Co. v. United States*, 200 U.S. 341, 351 (1906) (same and collecting cases); *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 815 (9th Cir. 1999) (holding court had authority to revoke unlawfully issued land patents).

Interior.[43] The Ninth Circuit found that sovereign immunity barred the plaintiffs' claims against the State, but nonetheless explained that the individuals could bring a new action to "sue[] the United States . . . to compel it to adjudicate their dispute with the State."[44] Thus, while plaintiffs could not directly recover title from the State, the Ninth Circuit indicated that plaintiffs could seek relief in a separate action against Interior to cure its unlawful actions.[45]

Similarly, in *Aguilar v. United States*, several allotment applicants alleged Interior wrongfully conveyed lands to the State under the Alaska Statehood Act.[46] This Court held Interior had acted arbitrarily and capriciously when it conveyed the land and failed to hold a hearing.[47] This Court remanded to Interior, holding that, "if [Interior] has mistakenly or wrongfully conveyed land to the State . . . it is the responsibility of [Interior] to recover that land."[48] In *Lord v. Babbitt*, an allotment applicant sued Interior arguing that Interior unlawfully conveyed his allotment to the State.[49] The United States filed a motion to dismiss, arguing in part that the State must be joined.[50] This Court denied that motion and held that the State was not a "required" party under Rule 19(a)

---

[43] 6 F.3d 1347, 1353 (9th Cir. 1993).

[44] *Id.* at 1354.

[45] *Id.* at 1352–55; *see also id*. at 1353 (explaining that 43 U.S.C. § 1166's statute of limitations (now found at 43 U.S.C. § 2506) would not bar Interior from recovering Native allotments).

[46] 474 F. Supp. 840, 842 (D. Alaska 1979).

[47] *Id.* at 846–47.

[48] *Id.* at 847.

[49] 943 F. Supp. 1203, 1205–06 (D. Alaska 1996).

[50] *Id.* at 1210.

Case 3:26-cv-00108-ACP     Document 21     Filed 05/29/26     Page 12 of 24

because the "issues between [plaintiff] and the government do not require the State's presence for their adjudication."[51] This Court found that Interior could provide the relief the applicant sought — reconveyance from the State — and Interior could recover the land from the State in a separate action.[52]

As these cases illustrate, the fact that the Secretary has deemed the State's topfilings effective selections and taken steps to transfer some of the lands does not divest this Court of subject-matter jurisdiction.[53] Additionally, any attempts to equate this litigation to a quiet title action against the State are unpersuasive.[54] Unlike a quiet title action, Northern Center seeks no relief from the State nor title to the land itself; the claims and requested relief here are solely against Interior for violations of federal law. As such, this case may proceed without the State because the Court may issue a judgment against Interior to (1) enjoin any further steps to treat the State's topfilings as valid land selections, (2) invalidate and vacate the Secretary's revocation decision, and (3) direct the Secretary to reinstate PLOs 5150 and 5180. Indeed, this is the relief specifically sought in the Complaint.[55] In short, because Interior has wrongfully taken steps to convey land to

---

[51] *Id.* at 1211.

[52] *Id.*

[53] While these cases arise in the context of Native allotments, the legal framework for determining the Court's subject-matter jurisdiction is analogous.

[54] *See* State Mot. at 2; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1074 (9th Cir. 2014).

[55] Compl. at 49–50.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 13

the State, Northern Center may bring an action compelling Interior to rectify its errors and use the available mechanisms to recover that land.[56]

The State's arguments also fail as a factual matter. The State frames Interior's actions to convey title to the public lands at issue in this case as a *fait accompli* because the Secretary has deemed the State's topfilings valid selections and begun the conveyance process.[57] This overlooks that Interior has not yet conveyed patents and the conveyance process is ongoing.[58] Indeed, Plaintiffs recently filed a preliminary injunction motion out of an abundance of caution to preserve the status quo and enjoin Interior from: (1) finalizing any patents on lands that have been tentatively approved, and (2) issuing any tentative approvals or patents on the 700,000 acres of Corridor lands that have yet to be tentatively approved.[59] The Ninth Circuit has explained that "the Secretary has an obligation to resolve title issues before issuing a patent to a parcel of public land."[60] As such, this Court can grant effective relief, should Northern Center succeed on the merits,

---

[56] *See Aguilar*, 474 F. Supp. at 847.

[57] State Mot. at 9, 13–14; *Safe Air*, 373 F.3d at 1039 (explaining that courts may consider evidence outside the complaint in a Rule 12(b)(1) factual attack).

[58] *Supra* pp. 6–7.

[59] *See* Pls.' Inj. Mot. at 3–4.

[60] *Shearer v. Haaland*, No. 20-36089, 2022 U.S. App. LEXIS 25433, at *5–6 (9th Cir. Sep. 8, 2022) (first citing *Cameron v. United States*, 252 U.S. 450, 460 (1920) (explaining that the Secretary "is charged with seeing that [Interior's] authority is rightly exercised to the end that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved"); and then citing *Ideal Basic Indus., Inc. v. Morton*, 542 F.2d 1364, 1367–68 (9th Cir. 1976) (explaining the Secretary's "plenary powers" over public lands continues until patent issuance, and "the Secretary has the power and duty" to determine the validity of a patent claim)).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 14

in a ruling directing Interior to take appropriate steps to comply with a court order finding its actions unlawful under ANCSA, FLPMA, ANILCA and NEPA.

In sum, this Court has subject-matter jurisdiction over these federal questions. At most, all that is warranted by the State's motion is an order dismissing the State as a defendant or directing Northern Center to file an amended complaint, excising the paragraph regarding joining the State as a defendant under Rule 19.[61] The fact that Northern Center seeks APA review of federal administrative action, which case law illustrates is appropriate, is independently sufficient to demonstrate that this Court has subject-matter jurisdiction to review the issues in this case and grant relief; nonetheless, Rule 19 and the public interest exception to joinder also reinforce that this case can and should proceed in the State's absence.

## II.    RULE 19(B) FAVORS THE CASE PROCEEDING.

The State does not address Rule 19 in its argument, aside from offering a conclusory assertion that it is likely a "required" party under Rule 19(a).[62] As *Lord v. Babbitt* illustrates, that is not so.[63] But even if this Court deems the State is a "required" party, that is not the end of the matter.[64] To determine whether a case should be dismissed

---

[61] *See* Compl. at 15; FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").

[62] State Mot. at 2.

[63] 943 F. Supp. at 1211.

[64] *See Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1323-1324 (Fed. Cir. 2020) (reversing dismissal based on sovereign immunity precluding joinder of a party because the District Court failed to assess Rule 19(b) factors).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 15

or proceed among the existing parties under Rule 19(b), the Court balances, at a minimum, four factors: (1) "adequacy of a judgment without the required party," (2) "adequacy of a remedy with dismissal," (3) "potential prejudice," and (4) "possibility to reduce prejudice."[65] These factors are "not exclusive of other considerations."[66] This requires a "practical examination of [the] circumstances."[67] Here, Rule 19(b) favors continuing this case without the State because: (1) this Court can afford relief without the State; (2) Northern Center has no other forum for relief; (3) Interior and the State would not be unduly prejudiced; and (4) the remedy would not unduly interfere with the State's interest.

First, as discussed above, this Court can afford complete relief without the State.[68] Under Rule 19(b), courts evaluate "whether a judgment rendered in the person's absence would be adequate."[69] Courts consider the interests of the courts and the public in "complete, consistent, and efficient settlement of controversies."[70] Here, Northern Center challenges Interior's unlawful withdrawal revocations and its unlawful actions treating

---

[65] *Maverick*, 123 F.4th at 980 (quoting *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 947 (9th Cir. 2022)).

[66] *Paiute-Shoshone Indians of the Bishop Cmty. v. City of Los Angeles*, 637 F.3d 993, 1000 (9th Cir. 2011).

[67] *Id.* (alteration in original) (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968)).

[68] *See supra* Argument Part I.

[69] FED. R. CIV. P. 19(b)(3).

[70] *Patterson*, 390 U.S. at 110.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 16

the State's topfilings as effective selections, and this Court can efficiently resolve these questions of federal law in the State's absence.[71]

Second, Northern Center would not "have an adequate remedy if [this] action were dismissed."[72] Courts should be very cautious about dismissal where the plaintiff lacks an alternative forum.[73] If this Court dismisses this case, Northern Center would likely have no other forum to redress its claims.

The Ninth Circuit has recognized the importance of a federal judicial forum for individuals to challenge unlawful conveyances from Interior to the State. In *Harrison v. Hickel*, the Ninth Circuit acknowledged that dismissing the individuals' claims against the State on sovereign immunity grounds could "raise a serious question," if the individuals otherwise lacked a judicial forum to seek relief.[74] The Court held that the individuals failed to show they were denied a judicial forum because they had not sued Interior to redress their land claims against the State.[75] Here, following the guidance in *Hickel*, Northern Center sued Interior to redress an unlawful land conveyance in federal

---

[71] *See supra* Argument Part I.

[72] FED. R. CIV. P. 19(b)(4).

[73] *Dawavendewa*, 276 F.3d at 1162; *see, e.g.*, *Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271, 275–77 (D.D.C. 1985) ("Because plaintiff lacks an alternative forum, requiring joinder of all parties could foreclose forever a legitimate cause of action against the government. We cannot sanction such a Draconian result."), *vacated on other grounds*, 699 F. Supp. 327 (D.D.C. 1988).

[74] 6 F.3d at 1352.

[75] *Id.* at 1353.

district court. If this Court dismisses this case, Northern Center would likely have no other avenue for relief, so this factor heavily favors proceeding without the State.

Third, Interior and the State would not be unduly prejudiced if this case proceeds without the State. Rule 19(b) requires courts to consider "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties."[76] There is no evidence that Interior would suffer prejudice if the case proceeds without the State. For example, Northern Center has not raised any claims against the State; Interior would not be obligated to defend claims on the State's behalf.[77] Further, any prejudice to the State would be minimal. As explained above, Interior's conveyance of lands within the Corridor is ongoing and incomplete.[78] Thus, the State's assertions that a decision in this case could not grant relief consistent with its "vested title,"[79] is incorrect. Moreover, because the State only recently received tentative approvals for a subset of lands, it is unlikely that the State would be harmed by having any newly-issued leases or other commitments put at risk from this litigation.[80] And as the State acknowledges, Northern Center filed this litigation within three weeks of the Secretary's revocation decision and

---

[76] FED. R. CIV. P. 19(b)(1).

[77] *See Paiute-Shoshone*, 637 F.3d at 1001 (dismissing case to avoid prejudice to existing party, which would be forced to make substantive arguments on behalf of absent party).

[78] *Supra* pp. 6–7.

[79] State Mot. at 13–14; *supra* note 20 (explaining State holds quitclaim rights in any tentatively approved lands).

[80] As Northern Center explained, maintaining the status quo during the pendency of this litigation is helpful to maintain the balance of equities in this case, and necessary to preclude irreparable harm. Pls.' Inj. Mot. at 15–16.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                      Page 18

before any tentative approvals were issued.[81] The State and Interior therefore assumed the risk that this litigation would interfere with the land conveyance process, making any harms "self-inflicted."[82]

Fourth, the relief sought in this case would lessen any potential prejudice against the State. Under Rule 19(b), courts evaluate "the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures."[83] Here, Northern Center seeks narrowly tailored relief — stopping Interior from continuing to violate federal law.[84] Further, should Northern Center prevail and be awarded all the relief it seeks, the State would still hold topfilings over the land, which may become effective selections at a future time.

### III. THE PUBLIC RIGHTS EXCEPTION TO JOINDER RULES APPLIES TO NORTHERN CENTER'S CLAIMS.

Even if this Court concludes the State is a necessary party under Rule 19, this Court should nonetheless hold that this case may proceed in the absence of the State under the public rights exception to Rule 19. The public rights exception is an exception to "traditional joinder rules" and permits a lawsuit to proceed without a necessary party

---

[81] State Mot. at 8.

[82] *Env't Democracy Project v. Green Sage Mgmt., LLC*, No. 22-cv-03970, 2022 U.S. Dist. LEXIS 183387, at *9 (N.D. Cal. Aug. 23, 2022); *cf. Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1093 (9th Cir. 2014) (explaining companies that presume permitting outcomes assume the risk).

[83] FED. R. CIV. P. 19(b)(2).

[84] Compl. at 49–50.

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                                           Page 19

because that party is not "indispensable."[85] The doctrine applies when (1) the litigation "transcend[s] the private interests of the litigants and seek[s] to vindicate a public right"; and (2) the litigation would "not destroy the legal entitlements of the absent parties."[86] The public rights exception applies here.

First, this case plainly "transcend[s] the private interests of the litigants and seek[s] to vindicate a public right."[87] "The public's interest in disposition of federal lands and, more concretely, in participating in the management of these lands is a matter of transcending importance."[88] This lawsuit is brought by ten public interest non-profit organizations, all of which share a mission to advocate for and protect Alaska's environment and public lands.[89] None of these organizations have an underlying financial, property, or other private interest at stake.[90] Northern Center seeks to vindicate and enforce public land management provisions of ANCSA and FLPMA, the subsistence

---

[85] *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988).

[86] *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (quoting *Conner*, 848 F.2d.at 1459).

[87] *Id.*

[88] *Nat'l Wildlife Fed'n*, 676 F. Supp. at 276.

[89] Compl. at 5–11.

[90] *See Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 489 F. Supp. 3d 1168, 1183 (D. Or. 2020) (holding that the public rights exception did not apply where "ultimately the interests of the Plaintiffs are private, economic interests"); *Protect The Peninsula's Future v. Haaland*, No. CV23-5737, 2025 U.S. Dist. LEXIS 93325, at *22 (W.D. Wash. May 15, 2025) ("Plaintiffs' focus is on protecting wildlife on publicly owned property within the Refuge; it has no discernable private interest at stake.").

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 20

protections of ANILCA, the administrative procedures of the APA, and the environmental protections of NEPA.[91]

Second, this case does not pose a risk of destroying the State's legal entitlements. If this Court rules in favor of Northern Center — setting aside the revocation of PLOs 5150 and 5180 and declaring that the Secretary's decision to treat the State's topfilings as effective selections was unlawful — the State would still have its topfilings. These topfilings could become effective selections if, and only if, the Secretary complies with applicable law to revoke the withdrawals[92] and Congress modifies ANCSA Section 17(c)'s prohibition on State selection.[93] Thus, if Northern Center is successful, the State's legal entitlement to its topfilings would not be destroyed.[94]

Moreover, any effect on the State's selections is not dispositive. Courts have "refused to require the joinder of all parties affected by public rights litigation — even when those affected parties have property interests at stake — because of the tight

---

[91] Compl. at 41–50; *see Conner*, 848 F.2d at 1460 (applying public rights exception where conservation groups sought to enforce compliance with environmentally-protective statutes, including NEPA); *Sierra Club v. Watt*, 608 F. Supp. 305, 325 (E.D. Cal. 1985) (applying public rights exception where public interest organizations sought a declaratory judgment that the Secretary violated FLPMA); *Protect the Peninsula's Future*, 2025 U.S. Dist. LEXIS 93325, at *22–23.

[92] Compl. at 43–49.

[93] 43 U.S.C. § 1616(c).

[94] *See Kescoli*, 101 F.3d at 1311; *California v. U.S. Dep't of Interior*, No. 25-cv-03850, 2025 U.S. Dist. LEXIS 166099, at *8 (N.D. Cal. Aug. 26, 2025) (holding that nonparty's legal entitlements would not be destroyed because the lawsuit challenged whether gaming was allowed on the land but it was undisputed that the government could take land into trust for other purposes).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 21

constraints traditional joinder rules would place on litigation against the government."[95]

"To find '[third parties] indispensable' whenever property rights are affected would 'sound[] the death knell for any judicial review of executive decisionmaking.'"[96] Here, the State does not have valid legal entitlement to effective selections of the lands within the Corridor. Congress has not altered Section 17(c), so the State is prohibited from selecting these lands.[97] Moreover, the conveyance process is far from complete and Northern Center has sought to enjoin Federal Defendants from taking any further actions to convey lands while this matter is pending.[98] Simply put, a court ruling declaring unlawful the Secretary's decision to treat the State's topfilings as effective selections cannot destroy legal entitlements the State does not have.

CONCLUSION

For the foregoing reasons, this Court should deny the State's Motion to Dismiss. If the Court deems it necessary, it should dismiss the State as a defendant, or direct

---

[95] *Conner*, 848 F.2d at 1459.

[96] *California*, 2025 U.S. Dist. LEXIS 166099, at *8 (quoting *Conner*, 848 F.2d at 1459).

[97] 43 U.S.C. § 1616(c).

[98] *Supra* Background (explaining the State holds equitable title to a subset of lands within the Corridor, subject to the same rights and restrictions as Interior, and explaining that the Secretary must resolve legal issues prior to patent issuance); *Conner*, 848 F.2d at 1460; *Protect The Peninsula's Future*, 2025 U.S. Dist. LEXIS 93325, at *23 (applying the public rights exception because "[o]nly the public right to administrative compliance with the Refuge Act" was before the court, and not the lease or treaty).

Pls.' Resp. to State of Alaska's Mot. to Dismiss
*N. Alaska Env't Ctr. v. Burgum,* No. 3:26-cv-00108-ACP                    Page 22

Northern Center to file an amended complaint removing the State, and otherwise allow

the case to continue on the merits.

Respectfully submitted, this 29th day of May, 2026.

 s/ Bridget Psarianos
Bridget Psarianos (AK Bar No. 1705025)
Suzanne Bostrom (AK Bar No. 1011068)
TRUSTEES FOR ALASKA

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of 7.4(a)(1) and contains 5,696 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4).

<u>s/Bridget Psarianos</u>
Bridget Psarianos

**<u>Certificate of Service</u>**

I certify that on May 29, 2026, I caused a copy of the PLAINTIFFS' RESPONSE TO STATE OF ALASKA'S MOTION TO DISMISS to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case.

<u>s/ Bridget Psarianos</u>
Bridget Psarianos