CORI MILLS
ACTING ATTORNEY GENERAL

Ronald W. Opsahl (Alaska Bar No. 2108081)
Jessica Moats Alloway (Alaska Bar No. 1205045)
Assistant Attorneys General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov
        jessie.alloway@alaska.gov

*Attorneys for State of Alaska*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DOUG BURGUM, in his official capacity as Secretary of the Interior, *et al.*, <br><br> Defendants. | Case No. 3:26-cv-00108-ACP <br><br> **STATE OF ALASKA'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

On May 21, 2026, Plaintiffs filed a Motion for Temporary Restraining Order and

Preliminary Injunction. ECF No. 17 ("PI Motion"). Although styled, in part, as a motion

for a temporary restraining order, it appears that Plaintiffs only seek a preliminary

injunction and are not requesting a TRO. *Id.* Regardless of form, this Court lacks

jurisdiction to grant the relief requested, and Plaintiffs have failed to demonstrate

likelihood of success on the merits, imminent irreparable harm, or that the public interest supports preliminary relief. For these reasons, the Motion should be denied.

## FACTUAL AND LEGAL BACKGROUND

The State submitted a thorough statement of the factual and legal background of this case in its Motion to Dismiss[1], and incorporates that section in full. As relevant here, Plaintiffs simply failed to seek injunctive relief when it was available during the window between issuance of Public Land Order 7966 on February 25, 2026, and its effective date of March 27, 2026.[2] At 8:00 a.m. on March 27, 2026, the former PLO 5150 lands became vacant, unreserved, unappropriated lands, and the State's top-filed selections became effective by operation of law.[3] The lands were then segregated from the public domain, and the State's sovereign real property interests vested.[4] On May 5, 2026, any possible doubt evaporated when the Department of the Interior issued Tentative Approval of the State's land selections within the former PLO 5150 area.[5] And, yet, Plaintiffs still did not seek preliminary relief until May 21, 2026—nearly three months after PLO 7966 was issued, almost two months after the opening order became effective, and more than two weeks after the Tentative Approval was executed.

---

[1]    State of Alaska's Motion to Dismiss, 3-9 (ECF No. 12).

[2]    *See id.* at nn. 24-29, 35-36, and accompanying text.

[3]    *See id.* at nn. 26-29 and accompanying text.

[4]    *See id.* at n. 29 and accompanying text.

[5]    *See id.* at nn. 32-34 and accompanying text.

*N. Alaska Evironmental Center v. Burgum*                    Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                    Page 2 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 2 of 21

## LEGAL STANDARD

As a threshold matter, a district court may not grant preliminary relief if the court lacks jurisdiction over the claims before it.[6] Jurisdictional questions must therefore be considered before evaluating a motion for a preliminary relief, "as the latter issue is moot if this court is without subject matter jurisdiction."[7] In *Shell Offshore*, this court considered a Rule 12(b)(1) motion, even though it was not yet ripe, before analyzing the merits of a motion for preliminary relief. Similarly, even though the State has not yet filed its reply in support of its Motion to Dismiss, this Court should nonetheless consider the State's arguments before turning to Plaintiffs' PI Motion.

Assuming, *arguendo*, that this Court finds it has jurisdiction, "[a]n injunction is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[8] To obtain a preliminary injunction, the moving party must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest."[9] Alternatively, under the Ninth Circuit's "sliding scale" approach a movant may obtain relief by showing "serious question going to the merits" if it also demonstrates that

---

[6]     *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 842 (D. Alaska 2012) (citing cases).

[7]     *Id.*

[8]     *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

[9]     *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

*N. Alaska Evironmental Center v. Burgum*      Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion      Page 3 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 3 of 21

the "balance of the hardships tips sharply toward the plaintiff" along with a likelihood of irreparable injury and that the injunction is in the public interest.[10] "Serious questions" are substantial, difficult, and doubtful issues warranting preservation of the status quo for more deliberative investigation.[11] Plaintiffs fail under either standard.

## ARGUMENT

**I.      This Court lacks jurisdiction and should not consider Plaintiffs' PI Motion.**

As more fully presented in the State's Motion to Dismiss,[12] this Court lacks jurisdiction over this matter. The State has not waived its sovereign immunity and cannot be summoned into a federal court "in a private action seeking to divest the state of a property interest" without its consent.[13] Because the State's sovereign real property interests in the Corridor have already vested, any relief Plaintiffs seek would necessarily divest the State of those interests—precisely the circumstance sovereign immunity is designed to prevent. Plaintiffs' failure to satisfy this threshold jurisdictional requirement is independently dispositive, and the Court need not reach any preliminary injunction factor.

---

[10]    *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011).

[11]    *Id.*

[12]    To avoid duplicative briefing, the State incorporates by reference its arguments presented in its Motion to Dismiss. ECF No. 12.

[13]    *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 289 (1997) (O'Connor, J., concurring).

*N. Alaska Evironmental Center v. Burgum*            Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                Page 4 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 4 of 21

## II. Plaintiffs cannot demonstrate any likelihood of success on the merits; the statutes are clear, and Plaintiffs' arguments fail on a plain reading.

The Ninth Circuit has consistently identified the likelihood of success on the merits as "a threshold inquiry" and "the most important factor."[14] "[A] court need not consider the other factors if a movant fails to show a likelihood of success on the merits."[15] Plaintiffs fail to cross that threshold here.

A. In their PI Motion, Plaintiffs rely on a single merits argument: that ANCSA Section 17(c) "prohibits the Secretary from treating the State's topfilings of lands previously subject to [PLO 5150] as valid selections and transferring the land absent further congressional action."[16] This argument fails on the face of the statutes.

Plaintiffs quote Section 17(c) and spend several pages explaining what they contend the plain meaning provides. The State does not dispute that Section 17(c) standing alone, prohibited State selection of lands withdrawn by PLO 5150.[17] What Plaintiffs inexplicably omit, however,[18] is that Congress did take further action—and that subsequent Congressional action is fatal to their argument.

---

[14] *See, e.g.*, *Envt'l Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020) ("Likelihood of success on the merits is a threshold inquiry and is the most important factor.").

[15] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (cleaned up).

[16] PI Motion at 9.

[17] 43 U.S.C. § 1616(c).

[18] To be fair, Plaintiffs reference ANILCA Section 906(j)(1) in a footnote, but Plaintiffs otherwise ignore the plain language of that provision. *See* PI Motion at 13, n.52.

*N. Alaska Evironmental Center v. Burgum*      Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion      Page 5 of 21
Case 3:26-cv-00108-ACP      Document 23      Filed 06/04/26      Page 5 of 21

**B.** When Congress enacted ANILCA Section 906(j)(1) in 1980, it expressly released the State from the blanket prohibition in ANCSA Section 17(c).[19] Section 906(j)(1) specifically identifies lands withdrawn by PLO 5150 as being available for future State selection provided those selections are made in accordance with Section 906(e).[20] The statutory text is unambiguous: Congress intended that PLO 5150 lands would be available for State selection as future Statehood Act entitlements,[21] and when those lands became available as vacant, unreserved, and unappropriated lands, the State would be entitled to conveyance.[22] To hold otherwise would render Section 906(j)(1) a nullity.[23] Plaintiffs' insistence that the two statutes must be read in isolation is untethered from both logic and established canons of statutory construction.

**C.** Plaintiffs contend that ANILCA only permitted the State to "note its desire to select lands that were unavailable,"[24] and that an additional act of Congress was required to give those selections effect.[25] Otherwise, Plaintiffs argue, ANCSA Section

---

[19]     *See* 43 U.S.C. § 1635(j)(1).

[20]     *Id.* ("[T]o the extent that *Public Land Orders Numbered 5150* . . . continue to prohibit State selections of certain lands, such lands shall remain unavailable for future State selection *except as provided by subsection (e) of this Act*[.]" (emphasis added)).

[21]     *Id.*

[22]     *Id.* § 1635(e)

[23]     Title IX of ANILCA, which includes Section 906, is entitled "Implementation of Alaska Native Claims Settlement Act and Alaska Statehood Act." Pub. L. No. 96-487, tit. IX, 94 Stat. 2371, 2430 (1980). Obviously, Congress intended Section 906 to direct the implementation of ANSCA, including ANCSA Section 17(c).

[24]     PI Motion at 13.

[25]     *See id.* at 11-12.

*N. Alaska Evironmental Center v. Burgum*          Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion          Page 6 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 6 of 21

17(c)'s prohibition would be rendered a "nullity."[26] But that is precisely what Congress has done through ANILCA.[27] Plaintiffs' reading also disregards the binding statutory mechanism that Congress put in place. ANILCA Section 906(e) provides that "[e]ach such application, if otherwise valid, would become an effective selection *without further State action* upon the date the lands become available under Section 6(a) or (b) [of the Alaska Statehood Act.]"[28] This language requires no further Congressional action—the selections became effective automatically by operation of law when PLO 5150 lands were reopened. Plaintiffs' suggestion that Congress nonetheless needed to separately rescind Section 17(c) before the selections take effect reads a requirement into the statute that simply does not exist.

The plain reading of ANILCA Section 906(j)(1) and 906(e)[29] supports the State's position. By operation of law—embodied within ANICLA Section 906—the State's topfilings automatically became effective once the PLO 5150 lands were reopened to "all forms of appropriation under the general public land laws."[30]

---

[26]    *Id.* at 12.

[27]    *See In re Glacier Bay*, 944 F.2d 577, 581 (9th Cir. 1991) ("where provisions in two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one" (cleaned up)).

[28]    43 U.S.C. § 1635(e).

[29]    PI Motion at 14 ("The State's topfilings could not become effective selections absent further action by Congress authorizing the transfer of those lands out of federal jurisdiction because of Section 17(c).").

[30]    PLO 7966, 37 Fed. Reg. at 9295.

*N. Alaska Evironmental Center v. Burgum*                          Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                          Page 7 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 7 of 21

**D.** Plaintiffs' attempts to put the horse back in the barn fail for the simple fact that the ranch is no longer owned by the Department of the Interior. The State's topfiled selections fully matured into valid selections upon the revocation of PLO 5150.[31] Property rights vested by operation of law as of the effective date of PLO 7966's opening order, and equitable title conveyed with the execution of the Tentative Approval.[32] Plaintiffs cannot prevail on their ANCSA Section 17(c) argument and therefore have failed to demonstrate any likelihood of success on the merits. And, because the statutory language is clear,[33] Plaintiffs have failed to demonstrate any "serious questions" going

---

[31]    43 U.S.C. § 1635(e); 43 C.F.R. § 2627.4(b).

[32]    43 U.S.C. § 1635(c)(1), (4) ("all right, title, and interest of the United States in and to such lands *is deemed to have vested in the State of Alaska as of the date of tentative approval*" (emphasis added)). In a footnote, Plaintiffs assert that "all right, title, and interest" is mere boilerplate and entitled to no special treatment. PI Motion at 7, n.21. While the triad "all right, title, and interest" is a habitual triplicate common in land conveyances to indicate the transfer of complete ownership, Plaintiffs miss the point by selectively quoting the statute. Plaintiffs blatant attempt to downplay the provision by ignoring the key operative phrase, "*vested in the State of Alaska as the date of tentative approval*," should be rejected.

[33]    *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) ("'Serious questions' are ones that 'cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation.'"). Here, there are no questions of fact and the statutory language is unambiguous, no further investigation is required. *See contra id.* (finding "genuine scientific and factual debate" requiring more deliberative investigation).

*N. Alaska Evironmental Center v. Burgum*                          Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                              Page 8 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 8 of 21

toward the merits.[34] The Motion should be denied on this basis alone, and this Court need not reach any other factor.[35]

**III.  Plaintiffs cannot demonstrate any imminent, irreparable harm; further conveyance actions are months to years in the future and preliminary relief is unwarranted.**

Plaintiffs candidly admit that they filed their Motion "out of an abundance of caution"[36]—a phrase that, by definition, denotes a precautionary measure taken where risks are minimal or speculative. Speculative risk does not justify the extraordinary remedy of a preliminary injunction.[37] Nonetheless, assuming this Court finds a basis to continue the inquiry, Plaintiffs must demonstrate that they are likely to suffer imminent, irreparable harm without preliminary relief.[38] They have not done so.

**A.**  Plaintiffs request that "further steps to convey the public lands at issue" be enjoined until the merits are resolved."[39] But, because the State's future land selections immediately became valid selections upon the reopening of the corridor lands,[40]

---

[34]  Plaintiffs' discussion of "serious questions" consists of a single statement that such questions exist, without any attempt at analysis. *See* PI Motion at 14.

[35]  The "balance of hardships" element of the sliding scale will be addressed in the public-interest prong, below. But, as will be discussed, the balance does not tip "sharply" for Plaintiffs, but instead for the State.

[36]  PI Motion at 3.

[37] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 2023 WL 2759864, *9 (D. Alaska April 3, 2023) ("'A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.'").

[38]  *Id.*

[39]  PI Motion at 1.

[40]  43 U.S.C. 1635(e); Pls' Exh. E at 4 (ECF No. 17-11).

*N. Alaska Evironmental Center v. Burgum*  Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion  Page 9 of 21
Case 3:26-cv-00108-ACP  Document 23  Filed 06/04/26  Page 9 of 21

approximately 2.1 million acres of land no longer meet ANILCA's statutory definition of "public lands."[41] The federal subsistence preference provisions Plaintiffs invoke[42] no longer apply to those lands as a matter of law—and an injunction pausing further conveyance steps would not change that legal reality.

Plaintiffs also argue that federal protections against "mining, oil and gas, and more" would be lost.[43] But those activities have already been authorized by the United States on these lands. The Tentative Approval itself excludes from conveyance to the State over 500 active, *federal* mining claim recordation's,[44] reserves to the United States nine *federal* rights-of-way,[45] and makes the conveyance subject to over 170 active, *federal* permits and rights-of-way, including the *federal* right-of-way permit for the Ambler Industrial Road.[46] These are not untrammeled lands, and any preliminary relief would have no effect on these valid, existing, *federally permitted* uses. Maintaining the status quo will not prevent any future harm; it would simply perpetuate the very legal land status Plaintiffs complain about.

---

[41] 16 U.S.C. § 3102(3)(A) (excluding from the definition of "public lands" "land selections of the State of Alaska which have been tentatively approved or validly selected").

[42] *See* PI Motion at 16.

[43] *Id.* at 15.

[44] Pls' Exh. F at 2-28 (Tentative Approval) (ECF No. 17-12) (listing exclusions).

[45] *Id.* at 29-32 (listing federally reserved rights-of-way).

[46] *Id.* at 32-77 (listing federally issued permits and rights of way to which the Tentative Approval is subject to); *id.* at 62 (listed right-of-way numbered 38 is the federal permit to the Alaska Industrial Development and Export Authority to construct, operate, and maintain the Ambler Industrial Road).

*N. Alaska Evironmental Center v. Burgum*                Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                Page 10 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 10 of 21

**B.**     As a practical matter, no further steps in the conveyance process are likely to be taken before the State's Motion to Dismiss is decided.[47] And, should this case survive the Motion to Dismiss, no further steps to convey remaining public lands are likely to occur before a merits decision were to issue.

Before a patent can be issued, BLM must complete surveys of the lands to be patented. Given the scale of lands granted by the Tentative Approval—approximately 1.4 million acres—those surveys are anticipated to take years to complete.[48] Based on current information, the State estimates that the first surveys will not begin for at least four years, with decades likely required to complete all surveys. As each survey is completed, BLM will publish a notice in the Federal Register, giving Plaintiffs ample opportunity to seek relief at that time.

There are two limited categories of land that could potentially move forward sooner. First, the State is aware of approximately 73,000 acres of land within the Corridor that are currently selected but not yet conveyed; however, the State has not yet submitted a request for priority conveyance and does not anticipate doing so until later this year. Second, the State is aware of approximately 206,000 acres with prior surveys that may not meet current standards; however, the State's review of those surveys will not be

---

[47]     This Court recently set oral argument for June 18, 2026 (ECF No. 22) to hear the State's Motion to Dismiss and the Plaintiffs' PI Motion.

[48]     Federal surveys are generally conducted on a township-by-township basis, over 100 individual townships are implicated in the Tentative Approval. *See* Pls' Exh. F (Tentative Approval) (ECF No. 17-12) (listing 104 State of Alaska Community Grant and General Purposes Grant selection applications).

*N. Alaska Evironmental Center v. Burgum*                Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                     Page 11 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 11 of 21

completed before late-2026, at the earliest, and the State cannot yet identify which specific parcels may be ready.

Outside of these two categories, the State has no current plans to request any additional conveyance decision from Interior. Any further conveyance actions are therefore unlikely to occur for months to years. Plaintiffs cannot show the immediate threatened injury required to justify preliminary relief.

**C.** Plaintiffs note that Section 6(g) of the Alaska Statehood Act allows the State to issue conditional leases and make conditional sales of selected land prior to patent issuance, citing this as evidence that the conveyance process remains incomplete.[49] However, equitable title vests with issuance of the Tentative Approval[50] and the ability of the State to dispose of its property interests is not at issue in this case. Moreover, Section 6(g) cuts against Plaintiffs: any such lease or sale issued before patent is necessarily conditional and could be unwound if a patent is not issued.[51] Actions taken under Section 6(g) therefore cannot constitute irreparable harm under Plaintiffs' own theory of this case. Moreover, any such State authorizations are subject to the public notice requirements of the Alaska Land Act, which would give Plaintiffs sufficient opportunity to seek relief if and when any specific action warranted it.[52]

---

[49]    *See* PI Motion at 7, n.22; Alaska Statehood Act, § 6(g), Pub. L. 85-508, 72 Stat. 339, 341-342 (July 7, 1958).

[50]    16 U.S.C. § 1635(c)(1), (4).

[51]    Alaska Statehood Act, § 6(g).

[52]    *See* Alaska Stat. § 38.05.945 (requiring public notice before the "sale, lease, or disposal of an interest in state land or resources").

*N. Alaska Evironmental Center v. Burgum*          Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                    Page 12 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 12 of 21

**D.** Much of the harm averred in Plaintiffs' declarations rests on incorrect information and misunderstandings of the legal and factual landscape.

*Mr. Groenke* raises federal subsistence preference concerns,[53] but as discussed above, an injunction would not restore federal subsistence preferences for the 2.1 million acres at issue—those lands no longer qualify as "public lands" under ANILCA. The remainder of his declaration consists of his personal experiences in the area (unrelated to land ownership),[54] his personal views regarding the effectiveness of Alaska's wildlife management program (not at issue here),[55] and his personal predictions of future uses of the lands (speculative).[56] None of these interests would be affected by the requested preliminary relief.

*Mr. Busby* raises similar federal subsistence preference concerns and expresses worry about "federal access guarantees" for his dog mushing and hiking business.[57] But, none of those activities would be prohibited under State management,[58] and his property—which is "hike-in access only"—holds a *federally* issued permit that is expressly protected as a valid, existing right under the Tentative Approval.[59] As to Mr.

---

[53] Decl. of Jeffery Groenke, ¶ 20 (ECF No. 17-2).

[54] *See, e.g.*, *id.* ¶¶ 11, 16.

[55] *See, e.g.*, *id.* ¶¶ 21, 22.

[56] *See, e.g.*, *id.* ¶¶ 13, 18.

[57] Decl. of Sean Busby, ¶¶ 6, 10 (ECF No. 17-3).

[58] *See* Alaska Stat. § 19.40.210 (only prohibiting off-road vehicle uses within the Dalton Highway Corridor, defined as five-miles on either side of the highway right of way and not including the entirety of the former PLO 5150 lands).

[59] Mr. Busby appears to operate as *Arctic Hive* and holds a federally issued permit to operate that is protected in the Tentative Approval. *See* Pls' Exh. F at 74 ("subject to"

*N. Alaska Evironmental Center v. Burgum*      Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion      Page 13 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 13 of 21

Busby concerns about access to Gates of the Arctic National Park and Preserve and the Arctic National Wildlife Refuge,[60] the Alaska Department of Natural Resources is actively engaging local communities, including Mr. Busby,[61] to identify routes through the tentatively approved lands to adjacent federal land.[62]

*Mr. Gaedeke* operates a lodge located approximately 100 miles outside of the Dalton Highway Utility and Transportation Corridor.[63] He does not aver any individual harm tied to the Corridor lands at issue,[64] his declaration instead reflects generalized opposition to the Ambler Industrial Road.[65] But, there is a *federally* issued right-of-way for the Ambler Industrial Road that is not subject to this litigation and would not be affected by the injunctive relief requested.

*Ms. Meader* owns property on Wild Lake, which is also located outside the Corridor and not affected by the conveyance process.[66] To the extent she is concerned

---

numbered 97 identifies the special recreation permit held by Arctic Hive, LLC); *see Arctic Hive*, *About*, available at https://www.arctichive.com/about.html (noting "hike-in access only").

[60]   Busby Decl. ¶ 10.

[61]   *Id.* ¶ 17.

[62]   *See* Alaska Dep't of Nat. Res., *Public Access on State Lands within the Dalton Highway Corridor*, available at https://dnr.alaska.gov/mlw/dhcpa/.

[63]   Decl. of John Gaedeke, ¶¶ 3, 12 (ECF No. 17-4) ("my lodge is about 100 miles to the west of the former PLOs 5150 and 5180 lands.").

[64]   *Id.*

[65]   *Id.* ¶ 11.

[66]   Decl. of Heather Meader (ECF No. 17-5).

*N. Alaska Evironmental Center v. Burgum*          Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion          Page 14 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 14 of 21

about access through the tentatively approved lands,[67] Alaska statutes protect that access.[68] Like the other declarants, the remainder of Ms. Meader's declaration consists of generalized assertions and personal predictions, none of which would be changed by the requested preliminary relief.

In sum, Plaintiffs have failed to demonstrate any imminent, irreparable harm. The Motion should be denied.

**IV.     The balance of equities and the public interest favor denial of preliminary relief; the State's ongoing management activities serve the very communities Plaintiffs claim to protect.**

When the government is the nonmoving party, "the balance of equities and public interest factors merge."[69] Both factors weigh heavily against injunctive relief here.

As noted above, a preliminary injunction would not reset the legal landscape to any pre-conveyance condition, and Plaintiffs' have not asked for that. Plaintiffs seek only to enjoin *additional* conveyancing actions.[70] The practical weight of any injunction would therefore fall on the State should it seek to file additional priority conveyance applications covering the estimated 73,000 acres of selected but unconveyed lands, or seek a patent to the approximately 206,000 acres of surveyed but unpatented lands.

---

[67]     *Id.* ¶ 13.

[68]     *See* Alaska Stat. § 19.40.210(a)(4) (uses to "gain access to private property that (A) is located outside of the corridor; and (B) has an established history of use as a homestead" are excluded from the prohibition of off-road vehicles within the statutorily defined "highway corridor"); *see also id.* § 19.40.210(e) (defining the "highway corridor" as land within five miles of the right-of-way of the Dalton Highway).

[69]     *Baird*, 81 F.4th at 1040.

[70]     PI Motion at 3-4.

*N. Alaska Evironmental Center v. Burgum*                    Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                    Page 15 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 15 of 21

Meanwhile, nothing about the requested relief would address Plaintiffs' perceived harms; federal subsistence preferences and federal access guarantees would remain unavailable because the land no longer qualifies as "public lands" as defined by ANILCA. The injunction would impose real costs on the State while delivering no benefit to Plaintiffs.

The public interest is better served by allowing the State to continue its management processes unimpeded. Although this litigation cannot divest the State of its vested property rights,[71] this action clouds the State's title and creates uncertainty around the State's lawful management of those vested property interests. That uncertainty has real consequences for the Alaskan communities—including federally qualified subsistence users—who depend on stable, predictable land management.

The State and the Department of the Interior have identified access for Alaska residents, including federally qualified subsistence users, as a priority concern during the conveyance process.[72] The State has accordingly committed to a "robust public process to engage stakeholders including Federal subsistence users and to identify facilities, access roads, or easements that may be necessary to access adjacent Federal, Alaska Native corporation lands, and Native allotments."[73] That process has begun and is continuing.[74]

---

[71]  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 289 (1997) (O'Connor, J., concurring) ("A federal court cannot summon a State before it in a private action seeking to divest the State of a property interest.").

[72]  Pls' Exh. D, 12-13 (ECF No. 17-10).

[73]  *Id.* at 14-15.

[74]  Alaska Dep't of Nat. Res., *Public Access on State Lands within the Dalton Highway Corridor*, available at: https://dnr.alaska.gov/mlw/dhcpa/.

*N. Alaska Evironmental Center v. Burgum*              Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion              Page 16 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 16 of 21

Most recently, the State held an open house in Wiseman on June 3, 2026, to gather public input on access needs and hear community concerns directly.[75] Additional in-person meetings in other interested communities will be scheduled.

Plaintiffs' own declarants illustrate why the State's management process—not an injunction—is the appropriate vehicle for addressing local concerns. Mr. Busby and Mr. Groenke, who have the most direct connections to the Corridor, both raise concerns regarding their abilities to access the land and engage in subsistence activities.[76] Proposed amicus curiae Mr. Armstrong raises similar concerns associated with his access and development of his *federal* mining claims in Wiseman.[77] The State's ongoing outreach and management efforts are intended to respond to the concerns of these local Alaskans, and their respective communities, and to ensure that access for all Alaskan's lawful uses are protected. An injunction would serve only to delay the State's efforts and needlessly prolong the uncertainty felt by these residents.[78]

---

[75] *Id.*; *see also* State of Alaska, Public Notice, *State of Alaska Engagement Regarding Access Across Selected Lands within the Dalton Highway Corridor* (Mar. 18, 2026) (modified Mar. 20, 2026), available at: https://aws.state.ak.us/OnlinePublicNotices/Notices/View.aspx?id=223132.

[76] *See, e.g.*, Busby Decl. ¶ 7; Groenke Decl. ¶ 20.

[77] *See, e.g.*, Proposed Amicus Curiae Brief of Jay R. Armstrong, 6-7 (ECF No. 13-2).

[78] The status of selected but unconveyed land leaves land management in an awkward position. Neither the State nor BLM are able to take unilateral land management actions, creating an uncertainty felt by the local community. *See* 43 U.S.C. § 1635(k)(1) (requiring prior State concurrence for any new federal "contracts[,] leases, licenses, permits, rights-of-way or easements" for activities to occur on State selected lands that have not yet been tentatively approved). Prolonging the time that lands stay in this category serves no interest.

*N. Alaska Evironmental Center v. Burgum*            Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion            Page 17 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 17 of 21

Most significantly, the injunction that Plaintiffs seek would affirmatively harm the subsistence users they claim to be protecting. As part of the conveyancing process, the State has committed to relinquishing approximately 400,000 acres within the Corridor and another approximately 250,000 acres adjacent to the Corridor by the end of 2026,[79] pursuant to Section 906(f)(2) of ANILCA.[80] Once formally relinquished, these lands would again meet the statutory definition of "public land" and the ANILCA federal subsistence preference would again attach. The State, however, is unwilling to assume the risk of relinquishing validly selected land while this litigation remains pending. Plaintiffs' requested relief would therefore delay—not protect—the restoration of federal subsistence protections for hundreds of thousands of acres of Corridor lands.

The balance of the equities and the public interest weigh towards denial of the Motion.

**CONCLUSION**

The granting of a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[81] Plaintiffs have failed to meet their burden. As a threshold matter, this Court lacks jurisdiction to issue a merits decision, including one for preliminary relief. Regardless, Plaintiffs have failed to meet any standard for injunctive relief. Because ANILCA

---

[79] Alaska Dep't of Nat. Res., *Revised Priority Conveyance Request, Lands within PLO 5150 North of Yukon River*, 2 (Jan. 26, 2026) (attached hereto as Exhibit 1).

[80] 43 U.S.C. § 1635(f)(2).

[81] *Earth Island Inst.*, 626 F.3d at 469.

*N. Alaska Evironmental Center v. Burgum*                Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion                        Page 18 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 18 of 21

Section 906(j)(1) and 906(e) expressly allowed the State's selection of PLO 5150 lands, which demonstrates Congress' clear intent to release the State from the prohibition provided in ANCSA Section 17(c), Plaintiffs cannot show a likelihood of success on the merits. Further, because issuance of patents to the State requires land surveys, and those surveys are months to years away from completion, Plaintiffs cannot show any imminent irreparable harm. Finally, as Plaintiffs' own declarants demonstrate—as has proposed amicus, Mr. Armstong—the public interest strongly favors the State completing its on-going land management determinations in the area to allow local communities access to needed subsistence resources, such as firewood. Plaintiffs' requested preliminary relief would only prolong the uncertainty being experienced in these communities.

Plaintiffs' motion should be denied and, as the State has demonstrated in its Motion to Dismiss (ECF No. 12), this case should be dismissed with prejudice.

DATED: June 4, 2026.

CORI MILLS
ACTING ATTORNEY GENERAL

By: */s/ Ronald W. Opsahl*
Ronald W. Opsahl (Bar No. 2108081)
Jessica Moats Alloway (Bar No. 1205045)
Assistant Attorneys General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone:  (907) 269-5100
Facsimile:  (907) 276-3697
Email: ron.opsahl@alaska.gov
          jessie.alloway@alaska.gov

*Attorneys for State of Alaska*

*N. Alaska Evironmental Center v. Burgum*          Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion          Page 19 of 21
Case 3:26-cv-00108-ACP     Document 23     Filed 06/04/26     Page 19 of 21

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 4,701 words.

*/s/ Ronald W. Opsahl*     *6/4/2026*
Ronald W. Opsahl     Date

*N. Alaska Evironmental Center v. Burgum*     Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion     Page 20 of 21
Case 3:26-cv-00108-ACP    Document 23    Filed 06/04/26    Page 20 of 21

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, I caused copies of the foregoing to be served by electronic means on all counsel of record by using the Court's CM/ECF system.

/s/ Ronald W. Opsahl
Ronald W. Opsahl
Senior Assistant Attorney General

*N. Alaska Evironmental Center v. Burgum*    Case No. 3:26-cv-00108-ACP
State of Alaska's Opposition to TRO/PI Motion    Page 21 of 21
Case 3:26-cv-00108-ACP  Document 23  Filed 06/04/26  Page 21 of 21