ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
MICHAEL ROBERTSON (DC Bar No. 1017183)
Trial Attorneys
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 (Turcke)
202-598-3835 (Robertson)
paul.turcke@usdoj.gov
michael.robertson@usdoj.gov

*Counsel for Defendants*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, *et al.*,<br><br>    Plaintiffs,<br>    v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the Interior, *et al.*,<br><br>    Defendants,<br>  and<br><br>STATE OF ALASKA,<br><br>    Defendant. | Case No. 3:26-cv-00108-ACP |

### DEFENDANTS' RESPONSE IN OPPOSITION
### TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP

1

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 1 of 21

## **INTRODUCTION**

This case arises from the Secretary of the Interior's decision to issue Public Land Order 7966, which partially revoked Public Land Orders 5150 and 5180 within the Dalton Highway/Trans-Alaska Pipeline System ("TAPS"), paving the way to resolve longstanding issues regarding ownership and management status of public lands in Alaska. More specifically, the Secretary's action allowed the selection of certain lands for transfer from federal to state ownership to take effect, in fulfillment of the Alaska Statehood Act. The revocation of the withdrawals allows the Department of the Interior to support the goals of the Alaska Statehood Act to convey lands to the State which enhance the State's self-sufficiency.

Plaintiffs, environmental organizations, filed this case on March 10, 2026. On May 21, 2026, they filed a Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 17 (the "Motion"). They do so "out of an abundance of caution to preserve [Plaintiffs'] equities and to prevent the potential for irreparable harm if Interior finalizes any land transfers to the State." *Id*. at 3.

A preliminary injunction is an extraordinary remedy. Plaintiffs cannot obtain that extraordinary remedy because the claim they raise is foreclosed as a matter of law by a straightforward reading of applicable statutory text. Additionally, Plaintiffs fail to make the required clear showing of non-speculative, imminent, irreparable injury. There is no basis for obtaining a "cautionary" preliminary injunction to "prevent the potential" for irreparable injury. Finally, a preliminary injunction would disserve the public interest in

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
2

resolving the transfer of lands to the State under the Statehood Act.

Plaintiffs do not approach their heavy burden in seeking preliminary injunctive relief, and the Court should deny the Motion.

## BACKGROUND

This case focuses on the Alaska Land Transfer Program, which is administered by the Bureau of Land Management ("BLM"). *See* https://www.blm.gov/programs/lands-and-realty/regional-information/alaska/land-transfer (last visited Jun. 3, 2026). Several statutory provisions and aspects of the Program are relevant in evaluating the Motion.[1]

### I.    Legal Background

A.    Alaska Statehood Act

"When Alaska became the 49th state in 1959, nearly all of its 365 million acres were under federal ownership." *Id*. "For the purposes of furthering the development of and expansion of communities," Section 6 of the Alaska Statehood Act "entitled" the newly-formed State to select 105 million acres of lands for its ownership. Alaska Statehood Act § 6, Pub. L. No. 85-508, 72 Stat. 339, 340 (July 7, 1958). The Statehood Act introduced the concept of "tentative approval" of State land selections, whereby the State can exercise authority over selected lands, even to the point of making "conditional sales" of such selected lands. *Id*. § 6(g).

---

[1]    Defendants present background information in this response that is focused on resolving the Motion, which only advances one of Plaintiffs' six claims on the merits, contending that Alaska Native Claims Settlement Act Section 17(c) prohibits the State's land selections at issue here. *See* Compl. ¶¶ 114-19, Dkt. 1. Defendants reserve the right to provide additional or different background material at any subsequent stages of this litigation.

B.    Alaska Native Claims Settlement Act

In addition to the State's interest in lands upon admission to the Union, in 1971 Congress perceived "an immediate need for a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims."  Alaska Native Claims Settlement Act § 2(a) ("ANCSA"), Pub. L. No. 92-203, 85 Stat. 688, 688 (Dec. 18, 1971) (codified at 43 U.S.C. §§ 1601–1629h).

ANCSA both implemented and provided for various types of withdrawals in order to prevent disposal under the public land laws pending the selection and conveyance process.  For example, ANCSA itself withdrew virtually all unreserved public land in Alaska.  Withdrawn lands were no longer subject to general public land laws, and much of these lands were also withdrawn from the mining and mineral leasing laws, and selection by the State of Alaska under the Statehood Act.  *See* 43 U.S.C. § 1616.

As pertains to the Motion, ANCSA Section 17(c), 43 U.S.C. § 1616(c), authorized the withdrawal of transportation and utility corridors and clarified that if the Secretary withdraws a utility and transportation corridor across public lands in Alaska, "the State, the Village Corporations and the Regional Corporations shall not be permitted to select lands from the area withdrawn." *Id*.  Congress included this provision, in large part, to allow for the location and construction of TAPS by ensuring that the pipeline corridor would not be subject to competing land claims.  *See Alyeska Pipeline Serv. Co. v. Kluti Kaah Native Vill. of Copper Ctr.*, 101 F.3d 610, 613 (9th Cir. 1996).

C.	Alaska National Interest Lands Conservation Act

The Alaska National Interest Lands Conservation Act ("ANILCA") reflects legislative policy and compromise of unique complexity and physical magnitude, commensurate with Alaska itself.  *See* Alaska National Interest Lands Conservation Act, Pub. L. No. 96-487, 94 Stat. 2371, 2371-2551 (Dec. 2, 1980).  In broad terms, ANILCA sought to protect the national interest in environmental values on Alaska public lands while providing for the socioeconomic needs of the State of Alaska and its residents.  *See* *Sturgeon v. Frost*, 587 U.S. 28, 36 (2019).

In this balancing, ANILCA Title IX addresses "Implementation of [ANCSA] and Alaska Statehood Act."  94 Stat. at 2430.  Title IX was designed to "establish[ ] an expedited legislative conveyance procedure" for land selections under ANCSA and the Statehood Act, along with "several other provisions designed to facilitate state and native land conveyances."  S. Rep. 96-413, 94 Stat. 2371 (Nov. 14, 1979) (published at 1980 U.S.C.C.A.N. 5070, 5179, 1979 WL 10337, at *235).  "The Title was adopted by the Committee as a means, along with the designation of national interest lands in the remainder of the bill, to help resolve Alaska's uncertain land ownership status with respect to State and Native land selections and conveyances."  *Id*.  "Title IX contains the substantive provisions which follow from the finding in Title I, that a prompt and thorough resolution of the status of Alaska public lands is in the best interest of everyone in the Nation."  *Id*.

As concerns the Motion, ANILCA Section 906(e) provides that Alaska may file

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
5

selection applications for unavailable lands, in the event they may become available later in time:

> Subject to valid existing rights and Native selection rights under [ANCSA], the State, at its option, may file future selection applications and amendments thereto, pursuant to section 6 (a) or (b) of the Alaska Statehood Act or subsection (b) of this section, for lands *which are not, on the date of filing of such applications, available* within the meaning of section 6 (a) or (b) of the Alaska Statehood Act, other than lands within any conservation system unit or the National Petroleum Reserve—Alaska.

94 Stat. at 2439 (codified at 43 U.S.C. § 1635(e)) (emphasis added). And Section 906(e) makes clear that such selections become effective by operation of law once the subject lands become available:

> Each such selection application, if otherwise valid, *shall become an effective selection without further action by the State upon the date the lands included in such application become available* within the meaning of subsection (a) or (b) of section 6 regardless of whether such date occurs before or after expiration of the State's land selection rights.

*Id.* (emphasis added).[2] As the title to subsection (e) indicates, such selections have become known as "top filings." *See Alaska v Haaland*, No. 3:21-cv-158-HRH, 2022 WL 772968, at *2 (D. Alaska, March 14, 2022) (defining "top filing" as a 'future selection' that falls into place when the land becomes available for selection through the lifting of a withdrawal or the rejection of a competing selection").

Several provisions in ANILCA Title IX clarify the meaning of tentative approval

---

[2] This provision largely mirrors the State's ability under Section 6(g) of the Statehood Act, which provided, "[u]pon the revocation of any order of withdrawal in Alaska, the order of revocation shall provide for a period of not less than ninety days before the date on which it otherwise becomes effective." 72 Stat. at 341. ANILCA established a deadline for selections, but allowed for future selections for lands that may become available. *See* 43 U.S.C. § 1635(a) and (e).

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
6

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 6 of 21

("TA").  In part, "all right, title, and interest of the United States in and to such lands is deemed to have vested in the State of Alaska as of the date of tentative approval[.]" ANILCA § 906(c)(1) (codified at 43 U.S.C. § 1635(c)(1)) (addressing and confirming prior TAs); *id*. § (c)(4) (providing that "future [TAs] . . . shall have the same force and effect as those existing [TAs] which are confirmed by this subsection").  Following TA issuance, a survey of the subject lands is overseen by the Secretary, following which "such lands shall be patented to the State."  *Id*. § (c)(2).

II.     **Factual and Procedural Background**

In essence, Plaintiffs challenge PLO 7966, which revoked earlier PLOs.  Due to the revocation, the State's top-filed selections within the Dalton Highway/TAPS corridor became effective by operation of law.  The relevant details are summarized below.

A.     <u>Secretarial Public Land Orders</u>

PLO 5150, issued in December 1971, withdrew lands along the Dalton Highway/TAPS corridor from mineral entry and prohibited selection under ANCSA or the Statehood Act.  *See* 36 Fed. Reg. 25410 (Dec. 31, 1971).  The following year, the Secretary issued PLO 5180 pursuant to ANCSA § 17(d)(1), 43 U.S.C. § 1616(d)(1), withdrawing largely overlapping lands from all forms of appropriation to protect the public interest.  Public Land Order 5180, 37 Fed. Reg. 5583 (Mar. 16, 1972).  PLO 5180 expressly covered all lands listed in PLO 5150 plus additional enumerated parcels.  *Id*. at 5584.

The Secretary partially revoked both PLOs on February 25, 2026, for the

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
7

Case 3:26-cv-00108-ACP     Document 25     Filed 06/04/26     Page 7 of 21

approximately 2,127,845 acres of public land that had been reserved for use as the Dalton

Utility Corridor. Public Land Order 7966, 91 Fed. Reg. 9293, 9293-94 (Feb. 25, 2026)

("PLO 7966"). PLO 7966 had the effect of opening those lands to mineral and resource

development opportunity. The PLO also opened those lands to State selection. The

State's top-filed selections thus immediately became effective by operation of law for

approximately 2,066,000 acres of "top filed" land on March 27, 2026, following the

opening order in paragraph 2 of PLO 7966. *Id*.[3]

### B. Implementation Efforts

Of Alaska's selections under the Statehood Act, BLM has thus far patented

approximately 70 million acres to Alaska, along with TA conveying equitable title for

approximately 28.7 million additional acres. *See* https://www.blm.gov/programs/lands-

and-realty/regional-information/alaska/land_transfer/state-entitlements ("State

Entitlements Page") (last visited June 3, 2026).[4]

Following BLM's above-described efforts, the State has approximately 5 million

acres remaining for its entitlement. *See* State Entitlements Page. BLM is working with

the State "on its prioritization of work and unraveling the complex top-filed land

selections for its remaining entitlement. In short, the remaining entitlement is the hardest,

---

[3] Approximately 62,000 acres within the revocation area were not top filed by the State. *See* Decision, Community Grant and General Purposes Grant State Selections, Dkt. 12-1.

[4] "[A]ll right, title, and interest of the United States in and to such lands is deemed to have vested in the State of Alaska as of the date of tentative approval," but the BLM must still issue a patent after a survey to determine with particularity what lands have been conveyed. 43 U.S.C. 1635(c).

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
8

most complex work left to do under this land transfer authority." *Id*.

The issuance of PLO 7966 catalyzed some of this complex work by operation of law. On April 21, 2026, the Department issued a decision finding, in part, that the lands previously subject to the withdrawals of PLOs 5150 and 5180 became open to appropriation under the public land laws by operation of PLO 7966, including selection by the State of Alaska. *See* Decision, Community Grant and General Purposes Grant State Selections, Dkt. 12-1. As a result, the State's top filings made pursuant to Section 906(e) of ANILCA are now effective selections. *Id*. at 4.[5] On May 5, 2026, the United States, through BLM, issued a TA for specified lands totaling approximately 1,378,476 acres. *See* Tentative Approval, Dkt. 12-2. The TA "confirms that all right, title, and interest of the United States in and to the lands described above is deemed to have vested in the State of Alaska pursuant to [ANILCA] Sec. 906(c)(4)." *Id*. at 76.

The last step in this process prior to issuance of a patent is for BLM to complete a survey of the selected lands. BLM is unlikely to complete any required survey work until calendar year 2027 at the earliest absent a specific request from the State to re-prioritize survey work. *See* Decl. of Kevin Pendergast ¶ 5, Ex. 1 hereto. This land is located in the northern part of Alaska and the work season for field survey is short. Given the logistics of surveying these lands, it is unlikely that field survey work could be completed this season. *Id*. Additionally, when BLM completes its field survey, it will publish a Federal

---

[5] The Decision declined to declare certain top filings as effective selections, based on the existence of specified federal facilities on the lands, and mining claims recorded prior to the effective date of PLO 7966. *Id*. at 5.

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP

9

Register notice providing a 30-day protest period before officially filing any survey.  *Id*.

        C.        Litigation Developments

Plaintiffs filed their complaint on March 10, 2026.  According to Plaintiffs, this Court can review PLO 7966 and declare it to be unlawful under several statutes, made reviewable by the Administrative Procedure Act ("APA").  *See* Compl. ¶¶ 1-5 (citing 5 U.S.C. § 706(2)).  On May 6, 2026, Defendant State of Alaska filed a motion to dismiss.  *See* State of Alaska's Mot. to Dismiss, Dkt. 12.  The State contends, in part, that it is a necessary and indispensable party to this action that, following TA issuance, holds "equitable title" but is barred from suit by the doctrine of sovereign immunity.  On May 21, 2026, Plaintiffs filed the Motion.  Plaintiffs specifically seek to "enjoin Interior from: (1) finalizing any patents on lands that have been tentatively approved, and (2) issuing any tentative approvals or patents on the 700,000 acres of Corridor lands that have yet to be tentatively approved."  Motion 3-4.

## LEGAL STANDARDS

### I.      A Preliminary Injunction is an Extraordinary Remedy.

A plaintiff seeking a preliminary injunction must show: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the preliminary injunction is not granted; (3) the balance of equities tips in its favor; and (4) an injunction is in the public's interest."  *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)).  Alternatively, the Ninth Circuit has stated that "'serious questions going to the merits' [rather than a

*N. Alaska Env't Ctr. v. Burgum*
Defs.' Resp. in Opp'n to Mot. for Prelim. Inj.

Case No. 3:26-cv-00108-ACP
10

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 10 of 21

likelihood of success on the merits] and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).[6] Under either test, the plaintiff must "establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction[,]" *id.* at 1131, and a deficiency in any one of the required elements precludes extraordinary relief. *Winter*, 555 U.S. at 24; *see also Grandmothers Growing Goodness v. Burgum*, No. 3:26-cv-00097-SLG, 2026 WL 765585, at *7 (D. Alaska Nov. 18, 2026) ("showing of a likelihood of an irreparable injury in the absence of preliminary injunctive relief is mandatory"). Because a "preliminary injunction is an extraordinary and drastic remedy," *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (citation omitted), the party seeking such an injunction must make "a clear showing that [it] is entitled to such relief." *Winter,* 555 U.S. at 22.

---

[6] Defendants do not concede the validity of *Cottrell*'s reasoning that the Ninth Circuit's historical "sliding scale" test for issuing a preliminary injunction survives *Winter*. *See Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235-36 (D.C. Cir. 2025) ("we have (somehow) gone seventeen years without needing to say if *Winter* really meant what it can be read to have said"); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring) ("a movant cannot obtain a preliminary injunction without showing *both* a likelihood of success *and* a likelihood of irreparable harm, among other things").

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
11

## II. Administrative Procedure Act Review of Agency Action.

Courts review agency decisions under the APA, 5 U.S.C. §§ 701-06.[7]  In such review the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction," or "without observance of procedure required by law."  *Id*. § 706(2).  Under this deferential standard, an agency need only "articulate a satisfactory explanation for its action," and the Court can find an agency decision arbitrary and capricious only if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or . . . is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 878 F.3d 725, 732-33 (9th Cir. 2017) (citation modified); *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Id*. (quoting *Bowman Transp. Inc. v. Ark.-Best Freight Sys.*, 419 U.S. 281,

---

[7]  Under the APA "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (internal citation omitted).  Defendants have not yet produced an administrative record, and Plaintiffs have filed various exhibits with the Motion.  Defendants do not concede that all of these materials are properly before the Court.  Any consideration of the extra-record submissions, particularly declarations, should be limited to evaluating "the equitable and public interest considerations that plaintiffs must address in order to obtain preliminary injunctive relief."  *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1078 n.16 (N.D. Cal. 2003).

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
12

286 (1974)).

When reviewing agency action under the APA, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority[.]" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). To resolve the meaning of disputed statutory language, a court shall adopt the interpretation that the court, "after applying all relevant interpretive tools, concludes is best." *Id.* at 400. "Careful attention to the judgment of the Executive Branch may help inform that inquiry." *Id.* at 413.

## ARGUMENT

Plaintiffs fail to meet their heavy burden in seeking preliminary injunctive relief. Plaintiffs cannot even show serious questions on the merits because the Motion presents only one claim on the merits that fails as a matter of straightforward statutory construction. Additionally, the Motion is based on the flawed premise that a preliminary injunction can be granted as a precautionary measure in order to protect against hypothetical, future irreparable injury. The failure to demonstrate a likelihood of imminent irreparable injury is fatal to the Motion. Finally, the equities and public interest disfavor preliminary injunctive relief, because further stalling the resolution of entitlements created by the Statehood Act cannot be squared with Congressional intent. The Court must deny the Motion.

## I. Plaintiffs Fail to Show a Likelihood of Success on the Merits

The Motion must be denied because Plaintiffs fail to show a likelihood of success

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
13

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 13 of 21

on the merits.  Plaintiffs advance only one claim on the merits as the basis for their Motion, i.e., that ANCSA "Section 17(c) expressly prohibits the Secretary from treating the State's topfilings of lands previously subject to that withdrawal as valid selections and transferring the land absent further congressional action."  Motion at 9.

Far from being likely to succeed (or even raising serious questions), this claim is easily dismissed through basic principles of statutory interpretation.  Plaintiffs' argument relies entirely on the contention that Congress intended for lands withdrawn under ANCSA Section 17(c) to be forever unavailable for State selection under the Statehood Act.  *Id*. at 10.  But this argument finds no support in the plain language of Section 17(c), and cannot be reconciled with subsequent Congressional action through ANILCA to address precisely the situation at the forefront of this case.

The relevant interpretive tools here start with the "primary canon . . . that the plain language of a statute should be enforced according to its terms, in light of its context."  *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  Next follows the "settled rule that [a court] must, if possible, construe a statute to give every word some operative effect."  *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004).

Use of these tools of statutory interpretation is straightforward here.  ANCSA Section 17(c) prohibits State "selection from the area withdrawn."  43 U.S.C. § 1616(c).  By its plain language, the prohibition on State selection terminates once the land is no

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
14

longer withdrawn.[8]  ANILCA Section 906(e) provides the State with the right to "file future selection applications" for unavailable lands which become "an effective selection without further action by the State" when the lands become available.  43 U.S.C. § 1635(e).  In other words, Section 906(e) reinforces the common sense understanding that lands can switch from being unavailable to being available for selection.  The plain language makes clear that a top filing pursuant to ANILCA 906(e) is not a selection until the land is available.  Here, the land became available upon the revocation of the withdrawal, and the future selection became an effective selection at the moment the statutory prohibition in ANCSA Section 17(c) ended.  Plaintiffs' interpretation, that ANCSA Section 17(c) operates to prevent (or override) ANILCA's detailed top filing mechanism, contradicts the plain meaning of these statutes.  ANILCA Section 906(e) reflects a detailed Congressional scheme that not only allows for top filing but makes clear that such selections become effective upon the revocation of any relevant withdrawals.  One could not attribute meaning to this detailed statutory mechanism without applying it to withdrawals under ANCSA Section 17(c).  Plaintiffs' interpretation would mean that the first Secretarial action to withdraw lands under ANCSA Section

---

[8]     In devising this scheme, Congress knew that an administrative agency has "inherent authority to reconsider previous action taken by it"—"[t]he power to reconsider is inherent in the power to decide."  *Albertson v. FCC*, 182 F.2d 397, 399-400 (D.C. Cir. 1950).  And the Secretary is empowered to "perform all executive duties . . . in anywise respecting" the "public lands of the United States," including whether to issue, or revoke, a withdrawal under ANCSA Section 17(c).  43 U.S.C. § 2.  And partial revocation of PLO 5150 has occurred before.  *See Alyeska Pipeline*, 101 F.3d at 613 (addressing the taxing power of an Alaska Native Corporation which received lands selected after a Secretarial decision to partially revoke PLO 5150).

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
15

Case 3:26-cv-00108-ACP     Document 25     Filed 06/04/26     Page 15 of 21

17(c) would be permanent and binding upon all future Secretaries, which lacks textual support in the statute.  And even if Plaintiffs pursue the analysis to the point of concluding that the ANCSA and ANILCA provisions were irreconcilable, the ANCSA provision they rely upon would yield to the subsequently enacted provisions of ANILCA. *See United States v. Yuginovich*, 256 U.S. 450, 463 (1921); *see also Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1034 (9th Cir. 2024).

The claim that Plaintiffs present in the Motion does not even meet the "serious questions" prong of the preliminary injunction standard.  *See Sovereign Iñupiat for A Living Arctic v. Burgum*, No. 3:25-cv-356-SLG, 2026 WL 215560, at *5 (D. Alaska Jan. 27, 2026) (explaining that "serious questions" must involve "a fair chance of success on the merits").  Plaintiffs' failure to meet even this standard forecloses entry of preliminary injunctive relief.  *Id*. at *7.

Additionally, as asserted in the State's Motion to Dismiss, Dkt. 12, this action should be dismissed because the State is a necessary party that cannot be joined.  As such, the Court lacks jurisdiction to make any determination on the merits, and the Plaintiffs have no likelihood of success if the Court grants the State's Motion.[9]

## II. Plaintiffs Fail to Show a Likelihood of Imminent, Irreparable Injury

To obtain a preliminary injunction, Plaintiffs must show a "likelihood of irreparable injury."  *Winter*, 555 U.S. at 21.  Because Plaintiffs do not come close to

---

[9]     Due to the preclusive effect the State's Motion to Dismiss on the Plaintiffs' likelihood of success on the merits, resolving the Motion to Dismiss first could render Plaintiffs' Motion moot.

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
16

meeting this standard, failure on this element constitutes an independent basis for denying the Motion.

As this Court recently explained, a preliminary injunction can issue only when a plaintiff demonstrates that it "is likely to suffer irreparable harm before a decision on the merits can be rendered." *Grandmothers*, 2026 WL 765585, at *4 (citation modified). Speculative injury is not sufficient, and the threatened injury must be "immediate." *Id*. "The movant, by a clear showing, carries the burden of persuasion." *Id*. Thus, in *Grandmothers*, the Court noted that alleged harms that could not occur before an anticipated ruling on the merits in October 2026 "cannot form the basis of a finding of likelihood of irreparable harm during the pendency of this case." *Id*. at *5. As a result, "the Court [did] not consider the remaining elements for a preliminary injunction." *Id*. at *7; *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (the purpose of the imminent harm requirement "is merely to preserve the relative positions of the parties" until a court can resolve the merits).

That reasoning applies here. Plaintiffs do not even allege that their feared injury— issuance of patents or a further TA—is immediate or likely. Rather, the Motion is based on the legally deficient view that a preliminary injunction can be issued "out of an abundance of caution," Motion at 3, "to avoid further arguments," *id*. at 4 n.1, to "paus[e] Interior's process to . . . preclude[e] it from taking further steps," *id*. at 15, and to "*best preserve* the Court's ability to provide [Plaintiffs] effective relief," *id*. at 16 (emphasis added). This prophylactic approach to preliminary injunctive relief finds no basis in the

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
17

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 17 of 21

law.

Regardless, the events Plaintiffs ask the Court to preliminarily enjoin are unlikely to occur in an imminent fashion. Plaintiffs specifically seek to enjoin "finalizing any patents on lands that have been tentatively approved[.]" Motion at 3. But Patents cannot issue until land surveys have been completed. *See* 43 U.S.C. § 1635(c)(2). It is Plaintiffs' burden to show that any patent issuance is imminent, but field surveys are unlikely to be completed in the short work season already underway. *See* Pendergast Decl. ¶ 5. Plaintiffs further seek to enjoin issuance of "any [TAs] or patents on the 700,000 acres of Corridor lands that have yet to be tentatively approved." Motion 3-4. Issuance of patents on these lands is even more unlikely, and a TA is unlikely to be imminent for these lands because pursuant to a Memorandum of Understanding with the State, BLM does not issue conveyances to the State, including a TA, until the State requests a conveyance. *See* Pendergast Decl. ¶¶ 3-4. Once requested, BLM must conduct a thorough review of its records for any third party interests in the land to be conveyed. *Id*. ¶ 3; *see also* Decision, Dkt. 12-1.

Finally, Plaintiffs fail to sufficiently address the tension between the positions they are taking on the Court's ability to provide equitable relief, should Plaintiffs ultimately succeed on the merits. As demonstrated above, the Motion was filed to prevent patents from being issued. But even in the Motion, Plaintiffs contend that "Courts generally have authority to revoke patents[.]" Motion at 4 n.1. And Plaintiffs make this point far more forcefully in responding to the State's motion to dismiss. *See* Pls.' Resp. to State of

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
18

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 18 of 21

Alaska's Mot. to Dismiss 11-14, Dkt. 21 (characterizing this action as designed to obtain a judgment "compelling Interior to rectify its errors and us[ing] the available mechanisms to recover the land"). Defendants do not concede these arguments or the Court's ability to rescind TAs or patents. But if Plaintiffs are correct, then Interior's issuance of a TA or even a patent cannot occasion irreparable injury. *See Gwich'in Steering Comm. v. Bernhardt*, No. 3:20-cv-204-SLG, 2021 WL 46703, at *9 (D. Alaska Jan. 5, 2021) (noting that "a court can, if warranted, order appropriate equitable relief at the merits stage").

In sum, the Motion is based on a flawed view of the preliminary injunction standard. Having failed the mandatory showing of actual, imminent, irreparable injury, the Motion must be denied.

### III. The Balance of Equities and Public Interest Favor Defendants

The Motion must further be denied because Plaintiffs have failed to show that the balance of equities tips in their favor or that a preliminary injunction would serve the public interest. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). When the government is a party, the analyses of the public interest and balance of equities merge, *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). Absent the necessary showing on the first two elements a court "need not dwell on the final two factors[.]" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778-79 (9th Cir. 2018).

Here, Plaintiffs primarily argue that a preliminary injunction "ensures that this

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
19

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 19 of 21

Court is *best positioned* to grant effective relief."  Motion at 20 (emphasis added).  But this precautionary framing is as inadequate in the public interest inquiry as in any other prong of the preliminary injunction standard.  Similarly, Plaintiffs' other public interest arguments are purely speculative – they contend that the lack of a preliminary injunction "could cause confusion and potentially conflicting property interests" or could facilitate unspecified yet allegedly harmful environmental impacts "under State management."  *Id*. at 20-21.  These contentions neither address nor overcome Congressional intent to obtain a "prompt and thorough resolution of the status of Alaska public lands" in furtherance of "the best interest of everyone in the Nation."  S. Rep. 96-413, 1979 WL 10337, at *235.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 4th day of June 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE (Idaho Bar No. 4759)
MICHAEL ROBERTSON (DC Bar No. 1017183)
Trial Attorneys, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 (Turcke)
202-598-3835 (Robertson)
paul.turcke@usdoj.gov
michael.robertson@usdoj.gov

*Counsel for Defendants*

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
20

Case 3:26-cv-00108-ACP    Document 25    Filed 06/04/26    Page 20 of 21

Of Counsel:

JOSHUA HANSON
STEVEN SCORDINO
JASON HARTZ
Office of the Solicitor
United States Department of the Interior

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum contains 5,089 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4).

*/s/ Paul A. Turcke*
Paul A. Turcke

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Paul A. Turcke*
Paul A. Turcke

*N. Alaska Env't Ctr. v. Burgum*
DEFS.' RESP. IN OPP'N TO MOT. FOR PRELIM. INJ.

Case No. 3:26-cv-00108-ACP
21